[No. D012055. Fourth Dist., Div. One. June 24, 1991.]

PRESENTING JAMUL et al., Plaintiffs and Appellants, v.
BOARD OF SUPERVISORS OF SAN DIEGO COUNTY et al.,
Defendants and Respondents.

**COUNSEL**

Duke, Gerstel, Shearer & Bregante and John S. Huiskamp for Plaintiffs and Appellants.

Lloyd M. Harmon, Jr., County Counsel, Diane Bardsley, Chief Deputy County Counsel, and Lewis P. Zollinger, Deputy County Counsel, for Defendants and Respondents.

**OPINION**

**WORK, J.**—Presenting Jamul appeals a judgment denying its petition for a writ of mandate and complaint for declaratory relief, in which it challenges the Board of Supervisors of San Diego County's (Board) denial of its request to toll the expiration date of the tentative subdivision map. The tentative map (Tentative Map) related to a proposed development known as the Honey

Springs Ranch Project, and the request for tolling was proposed pursuant to Government Code[1] section 66452.6, subdivision (c). The trial court rejected Presenting Jamul's contention the tolling application must be deemed granted as a matter of law, because the Board failed to act on it within the statutorily required 40-day time period. The court also held review was precluded, because the petition was not filed within the 90-day limit required by section 66499.37. This appeal challenges both holdings. We conclude Presenting Jamul's attack on the Board's denial of its tolling application, regardless of its form, is barred by section 66499.37 and, accordingly, affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

Presenting Jamul is a limited partnership of which Presenting, Inc., a California corporation, is the general partner. Presenting Jamul owns a parcel of land consisting of approximately 2,022 acres, known as the Honey Springs Ranch (Ranch). On January 6, 1969, a prior owner of the Ranch with neighboring property owners entered into an agricultural preserve contract with San Diego County (County) pursuant to the California Land Conservation Act of 1965 (the Williamson Act, § 51200 et seq.), restricting approximately 154 acres on the Ranch to agricultural usage and prohibiting subdivision of lots containing less than 600 acres. On February 6, 1977, 2 additional agricultural preserve contracts were entered into, covering approximately 1,400 additional acres on the Ranch. However, the aggregate agricultural preserve area did not engulf the entire property. In 1979, Presenting Jamul purchased the Ranch with the intent to rezone and develop the property into residential, commercial, and open-space areas, including 389 single-family homes on 553 acres, commercial facilities on 8 acres and food and recreational facilities on 151 acres, and other support facilities on 61 acres, leaving approximately 1,249 acres as open space.

In order to accomplish this development, Presenting Jamul on September 28, 1980, requested the Board to cancel all three of the agricultural preserve contracts pursuant to the cancellation provisions of the Williamson Act (§ 51280 et seq.), which was denied without prejudice. A second request for cancellation was granted by the Board on February 17, 1982, tentatively canceling all three agricultural preserve contracts. On May 5, the Board approved the Honey Springs specific plan, a related zone reclassification, a tentative map and a major use permit for a waste water treatment and reclamation facility. Approximately 352 acres of the area covered by the Tentative Map lies outside the area covered by the three agricultural preserve

---

[1]All statutory references are to the Government Code.
[2]The factual and procedural background has been drafted from the parties' stipulated statement of facts relied upon by the trial court below.

contracts. Approximately 132 of the 389 planned residences were to be located in this unrestricted area. On August 15, the Honey Springs Homeowners Association and the Sierra Club sought a writ of mandate in the superior court to require the Board to set aside its cancellation of the agricultural preserve contracts. Unsuccessful, they appealed to this court, which on June 29, 1984, reversed the trial court's decision and directed it to issue a writ directing the Board to set aside its cancellation of the agricultural preserve contracts, providing guidance for its reconsideration of the requested cancellations. (*Honey Springs Homeowners Assn.* v. *Board of Supervisors* (1984) 157 Cal.App.3d 1122 [203 Cal.Rptr. 886].) Finding the cancellation of the agricultural preserve contracts would not result in discontinuous patterns of urban development because intervening lands would likely in the foreseeable future develop in a manner similar to the Honey Springs Ranch project, the Board on April 17, 1985 again cancelled the three agricultural preserve contracts. On June 13, the Tentative Map was extended to expire on May 5, 1988. On July 15, the Honey Springs Homeowners Association and the Sierra Club once again filed a petition for a writ of mandate, challenging the Board's cancellation of the three agricultural preserve contracts. On December 8, 1986, Presenting Jamul requested the County to withdraw its application to cancel the three agricultural preserve contracts as part of a settlement between the County and the litigation parties. On February 24, 1987, the Board withdrew its cancellation, resulting in the settlement of the second lawsuit.

On March 13, County counsel issued an opinion on the effect of the withdrawal of the cancellation of the agricultural preserve contracts at the request of counsel representing the FSLIC, stating in pertinent part:

"Since the contracts have not been cancelled development or use of contracted land is prohibited except for agricultural purposes in accordance with the terms and conditions of the contracts for so long as they remain in effect. That means that a final map for Tentative Map 4306 cannot be recorded subdividing the land into parcels smaller than those permitted in the contracts (600 acre minimum parcel size). Consequently, Tentative Map 4306 will expire on May 5, 1988 without a final map being recorded. Furthermore, the Honey Springs Ranch Specific Plan, while not expiring, will not be able to be implemented on the contracted lands so long as the contracts remain in effect."

On April 8, County staff was directed to initiate an amendment to the Honey Springs Ranch specific plan (Specific Plan) to cause it to expire on May 5, 1988, the date the Tentative Map was scheduled to so expire. A hearing was scheduled before the Board on March 16, 1988 to consider this matter. However, on March 9, John S. Huiskamp, Presenting Jamul's

counsel, hand-delivered a letter to the Board's clerk, requesting the Board grant Presenting Jamul an additional 55-month extension of the Tentative Map pursuant to section 66452.6, subdivision (c) and requesting the Board vote against the amendment to the Specific Plan.[3] On March 16, before the Board's hearing on the Specific Plan amendment, Deputy County Counsel William Taylor and Raymond Patenaude, counsel for Presenting Jamul, agreed to the continuance of the Specific Plan amendment hearing to May 11. Upon Taylor's recommendation, the Board continued the matter to May 11. That afternoon, Taylor telephoned Huiskamp at which time Huiskamp requested the Board process the tolling application independent of its consideration of the Specific Plan amendment and inquired whether there existed any procedures for processing the tolling application. Taylor responded the tolling application would be processed independent of the Specific Plan amendment; however, there existed no established procedures for considering the tolling application, to his knowledge no tolling application had ever been previously made, and he would find out what procedure would be followed and advise Huiskamp of what would be necessary. Also that afternoon, Patenaude hand-delivered two letters to Taylor, insisting the Board consider the tolling application before May 5 and rescinding his consent to the May 11th continuation date. On March 25, Taylor informed Huiskamp that Bob Asher of the department of planning and land use would process the application and that documents should be delivered to him. On March 28, Huiskamp delivered to Asher all relevant documents from Presenting Jamul's engineer. Additional forms and a fee were forwarded to Asher by Huiskamp on April 5, with the transmittal letter advising the Board it was required to act within 40 days of the tolling application of March 9, to wit, April 9.

On April 21, the chief administrative office of the County issued a report to the Board, recommending it find the litigation did not involve the approval or conditional approval of the Tentative Map because it did not materially prevent Presenting Jamul from recording final maps on portions of Tentative Map 4306 and proceeding with the development of the property and consequently it should deny the request to stay pursuant to the tolling

---

[3]Section 66452.6, subdivision (c) provides: "The period of time specified in subdivision (a), including any extension thereof granted pursuant to subdivision (e), shall not include the period of time during which a lawsuit involving the approval or conditional approval of the tentative map is or was pending in a court of competent jurisdiction, if the stay of the time period is approved by the local agency pursuant to this section. After service of the initial petition or complaint in the lawsuit upon the local agency, the subdivider may apply to the local agency for a stay pursuant to the local agency's adopted procedures. Within 40 days after receiving the application, the local agency shall either stay the time period for up to five years or deny the requested stay. The local agency may, by ordinance, establish procedures for reviewing the requests, including, but not limited to, notice and hearing requirements, appeal procedures, and other administrative requirements."

application. On April 26, Huiskamp, by letter, advised the Board its tolling application had been deemed approved by operation of law, requesting it to note that approval in its minutes to protect against any future attack on the Tentative Map. On May 4, Taylor responded to Huiskamp's letter, asserting there was no merit to his assertion the application was approved by operation of law pursuant to section 66452.6, subdivision (c). On May 11, the Board considered both matters, denying the tolling application and deciding to take no action on the Specific Plan amendment. On May 17, Huiskamp requested rehearing, which was denied on June 22.

On November 9, Presenting Jamul filed a petition for writ of mandate and complaint for declaratory relief. By statement of decision dated October 26, 1989, the trial court pertinently held the petition was not timely brought under the applicable 90-day statute of limitations set forth in section 66499.37. Moreover, it concluded the tolling application was not granted as a matter of law, because the March 9th letter did not constitute a completed application for tolling, but rather the additional forms and fees submitted on April 5 constituted the application. Consequently, it held the Board acted within the 40-day time limit set forth in section 66452.6, subdivision (c).

## PRESENTING JAMUL'S CHALLENGE OF THE BOARD'S DECISION IS TIME-BARRED

■ The Board persuasively contends Presenting Jamul's action is barred by the 90-day statute of limitations set forth in section 66499.37.

Section 66499.37 pertinently provides: "Any action or proceeding to attack, review, set aside, void or annul the decision of [a] . . . legislative body concerning a subdivision, or of any of the proceedings, acts or determinations taken, done or made prior to such decision, or to determine the reasonableness, legality or validity of any condition attached thereto, shall not be maintained by any person unless such action or proceeding is commenced and service of summons effected within 90 days after the date of such decision. Thereafter all persons are barred from any such action or proceeding or any defense of invalidity or unreasonableness of such decision or of such proceedings, acts or determinations. Any such proceeding shall take precedence over all matters of the calendar of the court except criminal, probate, eminent domain and forcible entry and unlawful detainer proceedings." ■ Highlighted by a legislative declaration of calendar preference, this provision "manifests 'a patent legislative objective that the validity of . . . decisions of a local legislative body, or its advisory agency, be judicially determined as expeditiously as is consistent with the require-

ments of due process of law.' " (*Griffis* v. *County of Mono* (1985) 163 Cal.App.3d 414, 422 [209 Cal.Rptr. 519], quoting *Timberidge Enterprises, Inc.* v. *City of Santa Rosa* (1978) 86 Cal.App.3d 873, 886 [150 Cal.Rptr. 606].) "Such expedition is necessary because delay in the resolution of these disputes is ultimately reflected in increased development and housing costs." (*Hunt* v. *County of Shasta* (1990) 225 Cal.App.3d 432, 442 [275 Cal.Rptr. 113]; *Griffis* v. *County of Mono, supra*, 163 Cal.App.3d at p. 422.) In order to accomplish the cited purposes, the Legislature by design drafted section 66499.37 broadly, so it would govern "[a]ny action or proceeding to attack, review, set aside, void or annul" a decision by the legislative entity concerning a subdivision, "or of any of the proceedings, acts or determinations taken, done or made prior to such decision, or to determine the reasonableness, legality or validity of any condition attached thereto . . . ." (§ 66499.37.) Consequently, regardless of the nature of or label attached to the action challenging the legislative body's subdivision-related decision, the action is governed by section 66499.37.

██ Relying on inapposite case precedent, Presenting Jamul unpersuasively asserts section 66499.37 does not apply to preclude its attack by means of declaratory relief upon the Board's failure to recognize the tolling application was deemed statutorily granted by operation of law or alternatively the legal effect of the Board's findings was to grant a partial tolling of 34 months. Preliminarily, to construe section 66499.37 so as not to apply under these circumstances would defeat the Legislature's paramount intent to expedite judicial review of Subdivision Map Act controversies and thus control building and housing costs. The broad language the Legislature employed within section 66499.37 was specifically designed to include any challenge, regardless whether procedural or substantive in character, to any subdivision-related decision of either a legislative or advisory entity, or any of the necessary precedent proceedings, acts or determinations pursued before the making of the challenged decision. (See 9 Cal. Real Estate Law & Practice, § 292.11.) The courts have not hesitated to apply section 66499.37 so as to require litigants to timely commence their litigation challenging subdivision-related decisions at the earliest reasonable opportunity. (See, e.g., *Griffis* v. *County of Mono, supra*, 163 Cal.App.3d at pp. 420-423 [attack on approval of an extension of a tentative map]; *Soderling* v. *City of Santa Monica* (1983) 142 Cal.App.3d 501 [191 Cal.Rptr. 140] [attack on condition placed on the original tentative map]; *Timberidge Enterprises, Inc.* v. *City of Santa Rosa, supra*, 86 Cal.App.3d 873 [attack on school impact fee condition of tentative map]; *Kirk* v. *County of San Luis Obispo* (1984) 156 Cal.App.3d 453 [202 Cal.Rptr. 606] [attack on certificate of compliance].) Moreover, the courts have not hesitated to apply it when the legislative entity has succumbed to inaction, failing to follow the statutory scheme requiring specific

action ( *Hunt* v. *County of Shasta, supra*, 225 Cal.App.3d at p. 442 [failure to issue either a certificate of compliance or a conditional certificate of compliance with Subdivision Map Act]) or to issue a properly rendered decision reached by a majority of the members composing the legislative entity under the Subdivision Map Act (*id.* at p. 444). It applies where a party challenges a subdivision-related decision, arguing the entity was without the jurisdiction or legal authority to grant the request. (*Griffis* v. *County of Mono, supra*, 163 Cal.App.3d at pp. 420-423; 7 Miller & Starr, Cal. Real Estate (2d ed. 1990) § 20:124, pp. 351-352.) Indeed, section 66499.37 applies whenever "the conduct of a local agency under the Subdivision Map Act is called into question," even where it has allegedly exercised no discretion under the act. (*Kirk* v. *County of San Luis Obispo, supra*, 156 Cal.App.3d at p. 460; *Resource Defense Fund* v. *County of Santa Cruz* (1982) 133 Cal.App.3d 800, 809 [184 Cal.Rptr. 371].)

Consequently, given the broad language of section 66499.37 governing "[a]ny action or proceeding" challenging a subdivision-related decision or any event preceding that determination, Presenting Jamul's attack upon the procedural validity and merits of the Board's decision denying its tolling application was untimely. Each of its three causes of action set forth within its petition for writ of mandate and complaint for declaratory relief challenges either directly or indirectly the propriety or correctness of the Board's May 11 decision. Regardless of the varying legal stratagems in the causes of action from emphasizing procedural deficiencies to seeking a declaration of statutory entitlement to the tolling request rendering moot the Board's action, each was designed to set aside or annul the Board's May 11th decision.

We reiterate Presenting Jamul cannot avoid the application of section 66499.37 by filing a declaratory relief action seeking either a declaration that the Board's findings support a 34-month tolling or that the Board's May 11th decision was rendered moot because it was untimely under section 66452.6, subdivision (c) which resulted in the approval of the tolling application by operation of law. Any legislative inaction under the Subdivision Map Act requires timely application for judicial review. (*Hunt* v. *County of Shasta, supra*, 225 Cal.App.3d at p. 444.) Presenting Jamul's characterization of the facility of applying section 66452.6, subdivision (c) is overly simplistic and misleading. Whether the Board properly applied that provision involves factual determinations of whether the March 9th letter constituted a sufficient application, contextually complete, so as to start the running of the statute of limitations. If it was deficient so as not to permit the Board meaningful review and decision, when was the application completed? Every decision under the Subdivision Map Act made by either a

legislative or advisory entity inherently involves legal and factual determinations regarding the application of the statutory scheme which may be judicially reviewed only in a timely fashion pursuant to section 66499.37.

## DISPOSITION[4]

Judgment affirmed.

Wiener, Acting P. J., and Benke, J., concurred.

Appellants' petition for review by the Supreme Court was denied September 19, 1991.

---

[4]In light of our disposition, we do not address Presenting Jamul's remaining contentions going to the merits of the denial of its tolling application under section 66452.6, subdivision (c) and whether the Board's findings supported the granting of a partial tolling.