[No. F038382. Fifth Dist. Mar. 13, 2003.]

THE LEGACY GROUP et al., Cross-complainants and Appellants, v. CITY OF WASCO, Cross-defendant and Respondent.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I and III of FACTS AND PROCEEDINGS and parts I, II and IV-VI of DISCUSSION.

**COUNSEL**

California Lawyers Group and Robert B. Scapa for Cross-complainants and Appellants.

N. Thomas McCartney for Cross-defendant and Respondent.

**OPINION**

GOMES, J.—Developers of a subdivision sued a city for breach of the development agreements, indemnification, equitable estoppel and declaratory relief alleging the city wrongfully stopped acquiring infrastructure constructed by the developers for the subdivision. The city claimed it had no further obligation to acquire infrastructure because the 1:3 lien-to-value ratio specified in the contract had not been maintained. The trial court interpreted the agreements to mean that the developers could not sue for monetary damages and also held that all causes of action were barred by the statute of limitations in Government Code section 66499.37.[1]

In the unpublished portion of this opinion, we hold that the agreement is ambiguous and reasonably susceptible to two interpretations that do not eliminate monetary damages as a remedy. We remand the interpretation of the agreement to the trial court. Issues concerning whether or not the lien-to-value ratio was maintained and whether or not the city was subject to equitable estoppel were not reached by the trial court and, accordingly, those issues are remanded also.

In the published portion of this opinion, we hold that a cause of action for breach of a development agreement is not subject to the 90-day statute of limitations contained in section 66499.37 unless the act constituting the breach could have been challenged under the Subdivision Map Act (§ 66410 et seq.).

Accordingly, judgment in favor of the city is reversed and this matter is remanded for further proceedings.

FACTS AND PROCEEDINGS

Appellants The Legacy Group, a California limited partnership (Legacy), and Michael S. Brown, the general partner of Legacy (Brown), are the developers of a subdivision known as Valley Rose Estates located in Wasco,

---

[1]All subsequent statutory references are to the Government Code unless otherwise indicated.

California. Legacy owned the 480 acres of land on which Valley Rose Estates is located. Respondent City of Wasco (City) is a political division and legal subdivision of the State of California invested with corporate powers. This appeal concerns a dispute between Legacy and Brown (collectively Developers) and the City involving their contracts related to the development of Valley Rose Estates.

I. *Background on the Financing of the Development**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

II. *Development Agreements Between the City and Legacy*

On November 3, 1992, the City and Legacy entered into a development agreement (Development Agreement) to facilitate the development of Valley Rose Estates. The Development Agreement was intended to reduce uncertainty in planning, provide for orderly development, ensure timely installation of necessary improvements, provide appropriate public services to the project, and maximize the utilization of resources in an economically efficient manner.

On January 28, 1993, the City and Legacy entered into an acquisition agreement (Acquisition Agreement) pursuant to which Legacy agreed to construct and the City agreed to acquire certain improvements such as storm drains, sewers, water lines and street improvements necessary to provide public services to the project. The maximum amount of the total project cost for the improvements was stated as $5.2 million. To pay the cost of acquisition, the Acquisition Agreement stated the City would "conduct proceedings pursuant to the Municipal Improvement Act of 1913, with bonds to represent the unpaid assessments to be issued under the Improvement Bond Act of 1915 . . . ."

The City created the assessment district and began the process of creating the bonds (Improvement Bonds) that would pay off the bond anticipation note and serve as the last step in financing the acquisition of the infrastructure of the Valley Rose Estates. As part of this process, an assessment lien was created and recorded against the lots in Valley Rose Estates. A notice of assessment with a total confirmed assessment amount of $4,040,000 was recorded with respect to parcels comprising Valley Rose Estates on March 23, 1995. The Improvement Bonds were to be serviced with funds generated by the payment of the assessments on the lots.

The record does not clearly indicate when each of the steps for the issuance of the Improvement Bonds was taken. Nevertheless, it is clear that

*See footnote, *ante*, page 1305.

the Improvement Bonds were not issued until after Developers filed their cross-complaint against the City on March 31, 1995. According to the city manager of the City, who was also the executive director of the Wasco Public Financing Authority, approximately $4 million "in assessment (bond) proceeds were used in connection with the Valley Rose project." In contrast, the declaration of Brown asserts the improvement costs of the Valley Rose Estates project were less than $3 million.

The act that precipitated this litigation occurred on October 4, 1994. On that date, the city council held a meeting and decided to invoke the lien-to-value ratio set forth in section 5 of the Acquisition Agreement and to cease all further funding of the Valley Rose Estates project until an appraisal was obtained indicating the lien-to-value ratio had been brought within the limits specified in the Acquisition Agreement.

Because of this decision by the City and other litigation involving the development, Developers brought claims against the City. The first amended cross-complaint of Developers alleged four causes of action against the City; those causes of action are the subject of this appeal. The third cause of action asserted breach of contract, the sixth cause of action asserted indemnity, the seventh cause of action asserted estoppel, and the eighth cause of action requested declaratory relief. In substance, Developers alleged that the City wrongfully withdrew funding for the acquisition of infrastructure in the Valley Rose Estates.

The dispute was presented to the trial court on January 29, 2001.[10] The trial court determined that there was no conceivable set of circumstances under which Developers could prevail on any of their four causes of action against the City. One basis for the determination was that all of Developers' causes of action were barred by the statute of limitations in section 66499.37.

In addition, the trial court interpreted the agreements to "preclude any recovery for monetary damages against the City of Wasco arising from their alleged breach or breaches." This interpretation was based on section 4 of the Acquisition Agreement (AA section 4), which is titled "Limited Liability of the City of Wasco" and provides in part: "The City of Wasco's obligation to acquire the Improvements is not backed by the full faith and credit of the City of Wasco but is limited solely to funds available to the City of Wasco in the District, if any, as a result of the proceedings for formation of the

[10]Although the City designated the transcript of the January 29, 2001, proceedings as part of the appellate record, the transcription fee was not paid and it never became part of the appellate record.

District, confirmation of assessments and receipt of proceeds from the issuance of bonds."

As its first step in determining the meaning of AA section 4, the trial court ruled the Acquisition Agreement and the Development Agreement were unambiguous and fully integrated and, as a result, did not admit extrinsic evidence concerning the City's contractual obligations.

Based on the trial court's determinations concerning the statute of limitations and the meaning of the contracts, judgment was filed in favor of the City on February 14, 2001, and Developers' cross-complaint against the City was dismissed.

III. *Claims of Contractors Against Legacy* *

. . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISCUSSION

I., II.*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

III. *Section 66499.37 Does Not Apply to Contract Claims*

The city council's decision to invoke the lien-to-value clause of the Acquisition Agreement occurred in the first week of October 1994. Over six months later, the summons for Developers' first cross-complaint was served on the City.

 The City contends the four causes of action of Developers are barred by the 90-day period of limitation set forth in section 66499.37. The City asserts the causes of action fall within the express language of section 66499.37[16] because the cross-complaint is an action to attack or review a "decision" of the city council "concerning a subdivision." The trial court

_____

*See footnote, *ante,* page 1305.

[16]Section 66499.37 provides in relevant part: "Any action or proceeding to attack, review, set aside, void or annul the *decision* of an advisory agency, appeal board or legislative body *concerning a subdivision,* or of any of the proceedings, acts or determinations taken, done or made prior to such decision, or to determine the reasonableness, legality or validity of any condition attached thereto, shall not be maintained by any person unless such action or proceeding is commenced and service of summons effected within 90 days after the date of such decision. Thereafter all persons are barred from any such action or proceeding or any defense of invalidity or unreasonableness of such decision or of such proceedings, acts or determinations. . . ." (Italics added.)

agreed with the City's construction of the statute and ruled the cross-complaint of Developers was barred by section 66499.37.

Developers contend their four causes of action against the City arose from the City's failure to perform its contractual obligations and from the misrepresentations of the city manager and, as a result, the controversy did not arise out of the Subdivision Map Act (SMA) (§ 66410 et seq.) and is outside the scope of section 66499.37. Stated in terms of the statutory language, Developers argue that the determination by the city council to invoke the lien-to-value clause of the Acquisition Agreement was not a "decision . . . concerning a subdivision" for purposes of section 66499.37.

The contentions of the parties and the ruling of the trial court raise an issue of statutory construction concerning the proper scope of section 66499.37. ■ The construction of a statute is a question of law and subject to independent review on appeal. (*California Teachers Assn. v. Governing Bd. of Golden Valley Unified School Dist.* (2002) 98 Cal.App.4th 369, 375 [119 Cal.Rptr.2d 642] [construction of a statute is purely a question of law].)

The construction of section 66499.37 and its application to controversies involving subdivisions has been addressed in a number of published decisions. (See *Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 27 [32 Cal.Rptr.2d 244, 876 P.2d 1043] (*Hensler*) [listing nine appellate decisions applying § 66499.37]; *Maginn v. City of Glendale* (1999) 72 Cal.App.4th 1102 [85 Cal.Rptr.2d 639] [plaintiff challenged denial by city of a tentative parcel map to subdivide real estate].) ■ In construing section 66499.37, the California Supreme Court has stated it "applies by its terms to *any* action involving a controversy over or arising out of the Subdivision Map Act." (*Hensler, supra*, at p. 23; see *Donohue v. Santa Paula West Mobile Home Park* (1996) 47 Cal.App.4th 1168, 1173 [55 Cal.Rptr.2d 282] [§ 66499.37 did not apply where plaintiffs did not allege the city violated the SMA or improperly approved a tentative map].)

Notwithstanding the number of published cases applying section 66499.37, the appellate briefs of the parties did not cite any published case that explicitly addressed whether or not a claim for breach of a contract is subject to section 66499.37. Our own research did not locate any published decision in point. Because the issue of whether or not section 66499.37 applies to a breach of contract claim appeared to be an issue of first impression, we directed the parties to file supplemental letter briefs citing any case law, treatise, or other authority explicitly addressing whether or not the statute of limitations in section 66499.37 applies to a developer's cause

of action for breach of contract. Counsel for Developers submitted a letter stating that they were not able to locate any authority. Counsel for the City did not respond.

Our research uncovered one treatise addressing development agreements and section 66499.37. "Since a development agreement is a contract, presumably the normal contract statute of limitations will apply if either party wants to sue for breach of that contract." (5 Manaster & Selmi, Cal. Environmental Law & Land Use Practice (2002) § 74.65, p. 74-56.) We agree with the authors of this treatise and hold that a claim for breach of a development agreement is subject to the statute of limitations normally applicable to contract claims and is not subject to section 66499.37 unless the breach of contract claim overlaps with a claim arising under the SMA.

 Our decision that the city council's determination to invoke the lien-to-value clause was not a decision "concerning a subdivision" for purposes of section 66499.37 is based in part on the principle that a particular clause or section of a statute must be considered in the context of the statutory framework as a whole and harmonized with the other various parts of that statutory framework. (*California Teachers Assn. v. Governing Bd. of Golden Valley Unified School Dist., supra,* 98 Cal.App.4th at pp. 375-376.) Accordingly, we considered section 66499.37 in the context of (1) the SMA, (2) the statutory provisions concerning development agreements, and (3) related statutes of limitation.

From a general perspective, the provisions of the SMA[17] do not directly address development agreements. Instead, the development agreement statute, article 2.5, chapter 4, division 1 of title 7 of the Government Code (§ 65864 et seq.) (DAS), is the primary source of rules governing development agreements.[18] Therefore, the DAS is the first place one should look for a statute of limitations applicable to controversies involving development agreements. However, the DAS does not contain any period of limitations for actions involving development agreements.

Nevertheless, a specific statute of limitations was enacted to cover particular types of controversies involving development agreements. Subdivision (c)(1) of section 65009 provides in part: "[N]o action or proceeding

---

[17]The SMA is set forth in division 2 of title 7 of the Government Code.

[18]The DAS, which was enacted in 1979 after the adoption of the SMA, first authorized local governments to enter into development agreements with persons holding an interest in real estate. The DAS was enacted in an attempt to soften the vested rights doctrine set forth in *Avco Community Developers, Inc. v. South Coast Regional Com.* (1976) 17 Cal.3d 785 [132 Cal.Rptr. 386, 553 P.2d 546] (see Curtin et al., Cal. Land Use and Planning Law (22d ed. 2002) p. 205) and thereby provide for more predictable and efficient development.

shall be maintained in any of the following cases by any person unless the action or proceeding is commenced and service is made on the legislative body within 90 days after the legislative body's decision: [¶] . . . [¶] (D) To attack, review, set aside, void, or annul the decision of a legislative body to adopt, amend, or modify a development agreement. . . ."

■ Wherever reasonable, statutory constructions that produce internal harmony and avoid redundancy are preferred. (*Pacific Legal Foundation v. Unemployment Ins. Appeals Bd.* (1981) 29 Cal.3d 101, 114 [172 Cal.Rptr. 194, 624 P.2d 244].) Therefore, we must construe the pertinent provisions of section 65009 so that they are not redundant to the provisions in section 66499.37, so long as the construction is reasonable.

■ If a decision to adopt, amend or modify a development agreement is construed to be a decision "concerning a subdivision" for purposes of section 66499.37, then subdivision (c)(1)(D) of section 65009 would be redundant to section 66499.37. To avoid this redundancy, we construe the statutory provisions to mean that a decision to adopt, amend or modify a development agreement is not a decision "concerning a subdivision" for purposes of section 66499.37. In other words—the words used by the California Supreme Court to construe section 66499.37—an action challenging the decision to adopt, amend or modify a development agreement is not an "action involving a controversy over or arising out of the Subdivision Map Act." (*Hensler, supra,* 8 Cal.4th at p. 23.)

It then follows that a decision concerning only the interpretation of a clause in a development agreement—a decision less significant than a decision to adopt a development agreement—also is not a decision "concerning a subdivision" for purposes of section 66499.37.

Finally, because the SMA, including section 66499.37, has been operative since March 1, 1975, and no published decision has applied section 66499.37 to a breach of contract claim, we are reluctant to extend section 66499.37 to breach of contract claims unless the gravamen of the claim concerns acts that could have been challenged as a violation of the SMA. This exception precludes the parties from avoiding the application of section 66499.37 to decisions arising under the SMA simply by restating as contractual covenants the responsibilities imposed on local government by the SMA.

In this case, Developers' cross-complaint sets forth one claim subject to the exception. Developers alleged the City breached the contracts by refusing to approve the final tract maps for the Valley Rose Estates project. The

refusal to approve the final tract maps directly concerns a matter addressed by the SMA. (See *Griffis v. County of Mono* (1985) 163 Cal.App.3d 414 [209 Cal.Rptr. 519] [action challenging approval of final subdivision map barred by § 66499.37]; *Soderling v. City of Santa Monica* (1983) 142 Cal.App.3d 501 [191 Cal.Rptr. 140] [action to compel city to approve final subdivision maps barred by § 66499.37]; see also §§ 66435.1-66463.5.) When a breach of contract claim overlaps with or concerns acts by the city council that could have been challenged under the SMA, then the shorter statute of limitations set forth in section 66499.37 will apply. Accordingly, Developers' attack on the failure to approve maps, even though pled as a breach of contract, should have been brought within the 90-day period of limitation.

In summary, except for the allegations concerning the refusal by the City to approve final tract maps[19] set forth in paragraph 40(c) of the cross-complaint, we conclude that the alleged breaches of contract and other causes of action against the City are not subject to section 66499.37.

IV.-VI.*

. . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment filed February 14, 2001, is reversed. Appellants shall recover their costs on appeal.

Harris, Acting P. J., and Wiseman, J., concurred.

---

[19]We do not address whether a change in circumstances might subject the City to a subsequent action to compel approval of final tract maps.

*See footnote, *ante*, page 1305.