[No. E042724. Fourth Dist., Div. Two. Oct. 24, 2008.]

FRIENDS OF RIVERSIDE'S HILLS, Plaintiff and Appellant, v.
CITY OF RIVERSIDE et al., Defendants and Respondents;
RANCHO LA SIERRA WEST PARTNERSHIP et al., Real Parties in
Interest and Respondents.

**COUNSEL**

Johnson & Sedlack, Raymond W. Johnson, Abigail A. Broedling and Veera K. Tyagi for Plaintiff and Appellant.

Gregory P. Priamos, City Attorney, and Kristi J. Smith, Deputy Attorney, for Defendants and Respondents City of Riverside and City Council of the City of Riverside.

Cox, Castle & Nicholson, Michael H. Zischke and R. Chad Hales for Defendants and Respondents City of Riverside and Rancho La Sierra West Partnership and for Real Parties in Interest and Respondents Rancho La Sierra West Partnership, Arlington Partners, Meridian and Zuni Center Limited Liability Company.

Lobb Cliff & Lester, Paul Cliff, Robert J. Mitchell and David Cantrell for Real Parties in Interest and Respondents Eddie R. Fischer, John L. West, Beverly J. West, Henry C. Cox II, Jacqueline N. Cox, The Tyler Street Group and Jurupa Western, Inc.

## OPINION

**RAMIREZ, P. J.**—Appellant Friends of Riverside's Hills (Friends) appeals from the superior court judgment dismissing its petition for writ of mandate (petition). In its petition, Friends challenged the City of Riverside's (City) decision to approve three tract maps within the Rancho La Sierra Specific Plan (Specific Plan) area of Riverside, without requiring the applicant to comply with all conditions of approval and mitigation measures contained in the Specific Plan. The court dismissed the petition because Friends did not comply with the requirement of Government Code section 66499.37[1] that any action to attack or review, etc., the decision of a public body "concerning a subdivision" under the Subdivision Map Act (§ 66410 et seq.) (SMA) include service of a summons within 90 days after the date of the challenged decision. In this appeal, Friends challenges only the dismissal of the CEQA[2] cause of action regarding the mitigation measures. At issue here is (1) whether the section 66499.37 service of summons requirement applies to a petition for writ of mandate alleging a CEQA cause of action, where the petitioner challenges the decision of a public body "concerning a subdivision" under the SMA; and (2) if so, whether Friends's CEQA cause of action "concern[s] a subdivision" under the SMA.

As discussed below, we conclude that (1) the 90-day service of summons requirement of section 66499.37 applies to CEQA causes of action concerning a subdivision, because the requirement does not conflict with CEQA procedures such that CEQA actions would be excepted from the broad and well-established rule that any type of action challenging a decision under the SMA must comply with the 90-day requirement; and (2) Friends's CEQA cause of action concerns a subdivision, because it overlaps with the other SMA causes of action in the petition and could have been brought under the SMA. Thus, the trial court did not err when it dismissed the entire petition.

---

[1] All section references are to the Government Code unless otherwise indicated.

[2] California Environmental Quality Act. (Pub. Resources Code, § 21000 et seq.)

FACTS AND PROCEDURE

In 1979, the citizens of Riverside passed Proposition R, which set forth goals and policies for development in an area defined and named in Proposition R as the La Sierra Lands. The La Sierra Lands comprise roughly 755 acres of rolling, mostly vacant land at the northwestern edge of the City.

In 1987, the citizens of Riverside adopted initiative Measure C, which required the City to adopt a specific plan for the La Sierra Lands and further established planning objectives for the Specific Plan.

In 1996, the City approved the Specific Plan, which included conditions of approval and requirements for natural open space, and adopted mitigation measures relating to natural open space for projects in the Specific Plan area.

In 1998, the City Planning Commission approved applications by the owners of the La Sierra Lands and a developer (Real Parties in Interest) for several tentative tract maps. On June 13, 2006, the city council accepted as complete final tract map Nos. 28632, 28632-1, and 29027 (Project).

On July 14, 2006, Friends filed the petition naming the City as respondent and the landowners and developer as the real parties in interest. The petition sought to have the superior court set aside the City's decision to approve the Project. In the first cause of action for CEQA violations, Friends alleged (1) the City violated Public Resources Code section 21080, subdivision (g)[3] by weakening the conditions of approval regarding natural open space without holding a public hearing and by substituting equivalent conditions; and (2) violated Public Resources Code sections 21002,[4] 21081,[5] and

---

[3] "If, however, any condition of project approval set aside by . . . an administrative body . . . was necessary to avoid or lessen the likelihood of the occurrence of a significant effect on the environment, the lead agency's approval of the negative declaration and project shall be invalid and a new environmental review process shall be conducted before the project can be reapproved, unless the lead agency substitutes a new condition that the lead agency finds, after holding a public hearing on the matter, is equivalent to, or more effective in, lessening or avoiding significant effects on the environment . . . ." (Pub. Resources Code, § 21080, subd. (g).)

[4] "The Legislature finds and declares that it is the policy of the state that public agencies should not approve projects as proposed if there are feasible alternatives or feasible mitigation measures available which would substantially lessen the significant environmental effects of such projects . . . ." (Pub. Resources Code, § 21002.)

[5] "[N]o public agency shall approve or carry out a project for which an environmental impact report has been certified which identifies one or more significant effects on the environment that would occur if the project is approved or carried out unless . . . [¶] (a) The public agency [finds] . . . [¶] (1) Changes or alterations have been required in, or incorporated into, the project which mitigate or avoid the significant effects on the environment." (Pub. Resources Code, § 21081, subd. (a)(1).)

21081.6[6] by failing to enforce and implement the previously approved mitigation measures regarding natural open space. The petition contained three other causes of action regarding violations of the SMA that are not at issue in this appeal.

On September 14, 2006, the City and Real Parties in Interest appeared specially and filed a motion to dismiss the petition because Friends had failed to serve a summons within 90 days from the City's decision, as required by the SMA at section 66499.37.

After briefing by all interested parties, the trial court heard the motion on November 30, 2006. At the end of the hearing, the court granted the motion to dismiss. The court issued the minute order/judgment on January 9, 2007. The City and Real Parties in Interest filed the notice of entry of judgment on January 23, 2007. Friends filed its notice of appeal on March 20, 2007.

## DISCUSSION

### 1. *Standard of Review*

An order granting a motion to dismiss a petition for writ of mandate is reviewed de novo. (*Royalty Carpet Mills, Inc. v. City of Irvine* (2005) 125 Cal.App.4th 1110, 1118 [23 Cal.Rptr.3d 282] (*Royalty*).)

### 2. *Does the Section 66499.37 Summons Requirement Apply to CEQA Causes of Action Concerning a Subdivision?*

#### A. *Statutory Background and Issues Presented*

Friends contends that, because there is no summons requirement in CEQA, section 66499.37 does not apply here, even if the City's decision "concern[ed] a subdivision" within the meaning of that statute. This is because, Friends argues, under CEQA personal jurisdiction is conferred by personal service of the petition.

The SMA sets forth the summons requirement for any action to challenge an agency decision concerning a subdivision: "*Any action or proceeding to attack, review, set aside, void, or annul the decision of an advisory agency, appeal board, or legislative body concerning a subdivision*, or of any of the

---

[6] "A public agency shall provide that measures to mitigate or avoid significant effects on the environment are fully enforceable through permit conditions, agreements, or other measures." (Pub. Resources Code, § 21081.6, subd. (b).)

proceedings, acts, or determinations taken, done, or made prior to the decision, or to determine the reasonableness, legality, or validity of any condition attached thereto . . . *shall not be maintained by any person unless the action or proceeding is commenced and service of summons effected within 90 days after the date of the decision.* Thereafter all persons are barred from any action or proceeding . . . ." (§ 66499.37, italics added.)

■    Case law has made it clear that this 90-day service of summons requirement is mandatory and acts as a statute of limitations, barring actions under the SMA in which the service of summons is not accomplished within 90 days after the challenged decision of the legislative or advisory body. (*Sprague v. County of San Diego* (2003) 106 Cal.App.4th 119, 128 [130 Cal.Rptr.2d 517], citing *Maginn v. City of Glendale* (1999) 72 Cal.App.4th 1102, 1108 [85 Cal.Rptr.2d 639].)

The City and Real Parties in Interest argue that section 66499.37 governs all actions "concerning a subdivision," even those grounded in alleged violations of CEQA, and thus the Friends suit became barred when Friends did not serve the summons within 90 days of the city council's June 13, 2006, decision to accept the Project as complete.

■    Friends contends that the CEQA requirements for service of process, and no others, apply to the first cause of action. Prior to filing a petition for writ of mandate under CEQA, the petitioner must provide notice of the intent to sue to the public agency who approved the challenged project. (Pub. Resources Code, § 21167.5.) This notice tells the public agency that the action has begun and what project is being challenged. (*Board of Supervisors v. Superior Court* (1994) 23 Cal.App.4th 830, 842 [28 Cal.Rptr.2d 560] (*Board of Supervisors*).) Within 10 days after the petition is filed, the petition and a request to prepare the administrative record must be personally served on the lead agency. (Pub. Resources Code, § 21167.6, subd. (a).)

"The request [to prepare the administrative record], together with the complaint or petition, shall be served personally upon the public agency not later than 10 business days from the date that the action or proceeding was filed." (Pub. Resources Code, § 21167.6, subd. (a).)

Friends fulfilled the notice and service requirements. Friends provided its notice of intent to sue on July 12, 2006. Friends personally served the petition and its notice regarding preparation of the administrative record on July 21,

2006, within 10 business days after it filed the petition on July 14, 2006. Friends argues here that nothing else is required.

### B. 90-day Statute of Limitations Applies Broadly to Any Action "Concerning a Subdivision"

There is no case law directly addressing whether a petition alleging a CEQA cause of action that "concern[s] a subdivision" must comply with the 90-day statute of limitations resulting from section 66499.37. However, there is ample case law holding that the 90-day requirement applies to all types of actions seeking review of a legislative or advisory body's subdivision-related decisions under the SMA, regardless of the legal basis.

In *Presenting Jamul v. Board of Supervisors* (1991) 231 Cal.App.3d 665 [282 Cal.Rptr. 564] (*Jamul*), the appellate court found that the 90-day statute of limitations for challenging a legislative decision concerning subdivisions, resulting from section 66499.37's 90-day filing requirement, applies to *any* action or proceeding, regardless of its form, and thus applies to a complaint for declaratory relief. The appellate court affirmed the trial court's judgment denying a petition for writ of mandate and complaint for declaratory relief challenging the board of supervisors' denial of the petitioner's request to toll the expiration date of a tentative subdivision map. The basis of the denial was failure to file the petition within 90 days of the board's decision as required by section 66499.37.

The court found that the Legislature "specifically designed" the statute's "broad language" to include a wide range of actions.[7] (*Jamul, supra*, 231 Cal.App.3d at p. 671.) "[R]egardless of the nature of or label attached to the action challenging the legislative body's subdivision-related decision, the action is governed by section 66499.37." (*Ibid.*) The court stressed that section 66499.37 applies to any challenge to a subdivision-related decision, regardless of the "legal stratagems" employed, whether the challenge is "procedural or substantive," and whether it "directly or indirectly" attacks the legislative or advisory body's action or "inaction." (*Jamul, supra*, at pp. 671–672.) The court cites five appellate cases for this point, which include attacks on school impact fees and other conditions of tentative maps, the granting or failure to grant certificates of compliance, extension of a tentative map, and the legislative body's process and legal authority for making decisions under the SMA. (231 Cal.App.3d at pp. 671–672.)

---

[7] The court characterized the Legislature's "paramount intent to expedite judicial review of Subdivision Map Act controversies and thus control building and housing costs." (*Jamul, supra*, 231 Cal.App.3d at p. 671.)

Even our state's Supreme Court has emphasized, in *Hensler v. City of Glendale* (1994) 8 Cal.4th 1 [32 Cal.Rptr.2d 244, 876 P.2d 1043] (*Hensler*), that the 90-day statute of limitations under section 66499.37 applies to *any* type of action seeking review of a legislative or advisory body's subdivision-related decision under the SMA. In *Hensler*, the Supreme Court upheld the appellate court's affirmance of the trial court's judgment of dismissal, holding that the plaintiff landowner's inverse condemnation action against the city was barred under the 90-day statute of limitations imposed by section 66499.37, because it was filed three years after the city rejected the plaintiff's proposed development on his property. This is because the alleged taking resulted from the city's adoption pursuant to the SMA, and application to the plaintiff's property, of an ordinance prohibiting construction on major ridge lines. The court concluded that, "An action which requires that review [judicial review of a decision of the local legislative body concerning a subdivision or of the reasonableness, legality, or validity of any condition attached to a permit decision] is governed by section 66499.37 regardless of the plaintiff's characterization of the cause of action." (*Hensler, supra,* at p. 7.) The court further stated, "Every appellate decision which has considered the issue in a case involving a controversy related to a subdivision has held that section 66499.37 is applicable no matter what the form of the action." (*Id.* at pp. 26–27.) The Supreme Court then cited nine separate cases, including *Jamul* and the cases it cited, that find section 66499.37 applicable in various contexts. The key factor in each of the cases is that the action attacked or sought review of a decision of a local legislative or advisory body relating to a subdivision under the SMA.

█ Under the judicial decisions discussed above, the 90-day statute of limitations resulting from the 90-day filing and service of summons requirements of section 66499.37 applies to all causes of action brought to challenge a local body's decision under the SMA. We now consider Friends's argument that its CEQA cause of action is an exception, because (1) it is grounded in the more specific of the two procedural statutes, and the two statutes cannot be reconciled because they conflict; and (2) fulfilling the procedural requirements of the CEQA statutes, by itself, confers personal jurisdiction as stated in *Board of Supervisors, supra,* 23 Cal.App.4th at page 842.

### C. Are CEQA Actions Excepted from SMA's Broad 90-Day Summons Requirement?

In *Royalty*, the appellate court held that the 90-day service requirement found in Government Code section 65009, subdivision (c)(1)(E),[8] the general

---

[8] "[N]o action or proceeding shall be maintained in any of the following cases by any person unless the action or proceeding is commenced and service is made on the legislative body within 90 days after the legislative body's decision: [¶] . . . [¶] (E) To attack, review, set aside,

provision for challenging a conditional use permit under the Planning and Zoning Law (Gov. Code, § 65000 et seq.), applies to a petition for writ of mandate challenging a city's issuance of a conditional use permit based on failure to comply with CEQA. The court held this even though CEQA has its own separate requirements for challenging the issuance of a conditional use permit on CEQA grounds, found at Public Resources Code section 21167.6, subdivision (a).[9] The petitioner argued that Public Resources Code section 21167.6, subdivision (a), should apply exclusively, because it governs challenges to a conditional use permit based specifically on noncompliance with CEQA, whereas Government Code section 65009, subdivision (c)(1)(E), governs challenges to a conditional use permit generally. Further, the petitioner argued that the two statutes cannot be reconciled, and thus the more specific of the two, the CEQA statute, should apply. (*Royalty, supra*, 125 Cal.App.4th at p. 1121.) The petitioner wanted the CEQA statute to apply exclusively because it allowed the city to agree to an extension of the 10-day personal service deadline contained in Public Resources Code section 21167.6, subdivision (a), whereas there was no good cause exception to the 90-day deadline for personal service set forth in Government Code section 65009, subdivision (c)(1)(E).[10] The petitioner had served the petition on the city 97 days after the city approved the conditional use permit.

The appellate court reasoned that the two statutes can be reconciled because only one of them requires dismissal when its time limits are not met, and thus the petitioner was required to comply with the requirements of both. Specifically, "the seemingly mandatory service requirement of Public Resources Code section 21167.6, subdivision (a) can be extended for good cause." (*Royalty, supra*, 125 Cal.App.4th at p. 1123.) "As a result, the statutes can and should be harmonized. To accomplish the Legislature's purpose of limiting the time in which a decision regarding a conditional use permit can be challenged by filing and serving a petition, in no event can service of the petition be accomplished beyond the 90-day time bar contained in the Government Code. To conclude otherwise would be to ignore the absolute limitations bar contained in Government Code section 65009." (*Ibid.*)

void, or annul any decision . . . to determine the reasonableness, legality, or validity of any condition attached to a variance, conditional use permit, or any other permit." (§ 65009, subd. (c)(1)(E).)

[9] "At the time that the action or proceeding is filed, the plaintiff or petitioner shall file a request that the respondent public agency prepare the record of proceedings relating to the subject of the action or proceeding. The request, together with the complaint or petition, shall be served personally upon the public agency not later than 10 business days from the date that the action or proceeding was filed." (Pub. Resources Code, § 21167.6, subd. (a).)

[10] Service of a petition may be perfected beyond the time set forth in the Public Resources Code upon a showing of good cause. (*Board of Supervisors, supra*, 23 Cal.App.4th at pp. 846–848.)

■ We recognize, as Friends points out in its reply brief, that both the facts and the statutes in *Royalty* differ in significant respects from the case at hand. However, *Royalty* shows that CEQA causes of action challenging government decisions made under other statutory schemes (in *Royalty* the Planning and Zoning Law generally; here the SMA) must comply with the procedural requirements of both CEQA and the other statutory scheme, at least where the two statutory schemes do not conflict with each other.

■ "As a general rule, when two statutes relate to the same subject, the more specific one will control unless they can be reconciled. [Citations.] When the two statutes can be reconciled, they must be construed 'in reference to each other, so as to "harmonize the two in such a way that no part of either becomes surplusage." ' " (*Royalty, supra,* 125 Cal.App.4th at p. 1118, quoting *DeVita v. County of Napa* (1995) 9 Cal.4th 763, 778–779 [38 Cal.Rptr.2d 699, 889 P.2d 1019].) Put another way, "If we can reasonably harmonize '[t]wo statutes dealing with the same subject,' then we must give 'concurrent effect' to both, 'even though one is specific and the other general. [Citations.]' [Citation.]" (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 478 [66 Cal.Rptr.2d 319, 940 P.2d 906].)

Here, as the City and Real Parties in Interest point out, there is no conflict between the two statutory schemes because the statutes do not have identical mandates addressing the same action. This is because the SMA requires the petitioner to serve the summons on the legislative body within 90 days of the challenged decision, whereas nothing in CEQA prohibits service of the summons or mandates dismissal if the summons is not served. Both CEQA and section 66499.37 can be harmonized. Friends could easily have complied with the SMA service of summons requirement without running afoul of the CEQA procedures; it simply failed to do so. Notwithstanding Friends's detailed statutory arguments to the contrary, it could have satisfied the requirements of both statutory schemes without conflict.

Further, as the City and Real Parties in Interest state, *Royalty* and *Board of Supervisors* affirm that the service requirements of CEQA can be extended for good cause. The service requirements of section 66499.37, like section 65009 in *Royalty*, are mandatory and dismissal is mandated for failure to meet the specified deadlines. Thus, for the same reasons that the CEQA statutes do not conflict with the section 65009 service statute in *Royalty*, they do not conflict with the SMA's service requirements in section 66499.37.

We also address Friends's contention that, under *Board of Supervisors*, it satisfied all requirements for service of a CEQA petition and nothing further is required. Friends points to the following language in *Board of Supervisors*

to support its argument that it need only fulfill the CEQA service requirements: ". . . Public Resources Code section 21167.6[, subdivision] (a) . . . does include the requirement for jurisdictional service of the petition in CEQA proceedings. . . . [¶] . . . [T]he service is 'jurisdictional' in the sense that it is intended to obtain and confer personal jurisdiction over the defendant . . . ." (*Board of Supervisors, supra*, 23 Cal.App.4th at pp. 844–845.) Friends argues that this means the court obtained jurisdiction over this CEQA cause of action once Friends fulfilled CEQA's service requirements, and that it need not have served the summons as required by the SMA through section 66499.37.

That is not what this court said in *Board of Supervisors*. In fact, we specifically stated that, "The introductory clause of Public Resources Code section 21167.6 [notwithstanding any other provision of law] simply cannot be used to blot out the entire statutory framework for service of process, insofar as the statute does not provide alternate rules . . . ." (*Board of Supervisors, supra*, 23 Cal.App.4th at p. 840, fn. 7.) Here, CEQA does not provide alternate rules for service of the summons, and so does not "blot out" the service of summons rule contained in the SMA. The issue we decided was whether the petitioners' failure to comply with the CEQA personal service requirements of Public Resources Code section 21167.6, subdivision (a), mandated dismissal, whereas the purpose of this case is to determine whether Friends complied, or was required to comply, with the SMA. The actual holding was that the above provision was the proper vehicle for establishing jurisdiction over the respondent in that CEQA action, but that the provision was not jurisdictional in the sense that failure to comply mandated dismissal. (*Board of Supervisors, supra*, at p. 834.)

In sum, Friends was required to comply with the SMA's 90-day service of summons requirement found at Government Code section 66499.37, even though it had already personally served a copy of the petition in compliance with CEQA at Public Resources Code section 21167.6, subdivision (a).

### 3. Did Friends's CEQA Cause of Action "Concern[] a Subdivision?"

Finally, we determine whether the first cause of action, alleging the City failed to enforce the adopted Specific Plan mitigation measures as conditions of approval to the Project and substituted less effective mitigation measures, "concern[s] a subdivision" under section 66499.37. Friends argues that the first cause of action involves allegations that the City violated CEQA, not the SMA, and therefore does not "concern[] a subdivision." The City and Real Parties in Interest argue that the CEQA claim directly challenges the City's approval of the Project, and thus clearly "concern[s] a subdivision" under

section 66499.37. Both parties cite to *Legacy Group v. City of Wasco* (2003) 106 Cal.App.4th 1305 [131 Cal.Rptr.2d 460] (*Legacy Group*) for their respective contentions, and we find the opinion instructive as well.

In *Legacy Group*, the appellate court was asked to decide whether a cause of action for a city's breach of a development agreement is subject to the 90-day statute of limitations contained in section 66499.37. The plaintiffs were developers who sued to enforce development agreement provisions regarding the city's obligation to purchase improvements constructed by the developer. The appellate court held that section 66499.37 does not apply to a contract cause of action unless the claim overlaps with a claim arising under the SMA (*Legacy Group, supra*, 106 Cal.App.4th at p. 1312) and could have been challenged under the SMA. The court found that the city's decision to invoke a particular clause of the development agreement did not overlap with a claim arising out of the SMA, and could not have been brought under the SMA. This is, in part, because the provisions of the SMA do not directly address development agreements, as these are addressed in the development agreement statute, found at section 65864 et seq., which is not part of the SMA. (*Legacy Group, supra*, at p. 1312.)

We contrast that to this case, where the CEQA cause of action alleges that the City violated CEQA by not including certain mitigation measures, such as provisions for open space, in the conditions of approval for the Project. The SMA addresses and authorizes conditions of approval for tract maps.[11] Further, the second cause of action ("The City failed to require compliance with the Conditions of Approval") directly overlaps with the CEQA cause of action, in that they *both* seek to compel the City to require compliance with the conditions of approval regarding open space.[12] The same goes for the third cause of action ("All parties failed to comply with the Subdivision Map Act and Riverside Municipal Code Title 18").[13] The same goes for the fourth cause of action as well ("The Project is Inconsistent with the Rancho La Sierra Specific Plan") in that the first cause of action also alleges that the City failed to enforce the mitigation measures adopted as part of the Specific

---

[11] "The legislative body shall . . . approve the map if it conforms to all the requirements of this chapter and any local subdivision ordinance applicable at the time of approval or conditional approval of the tentative map and any rulings made thereunder. If the map does not conform, the legislative body shall disapprove the map." (§ 66458, subd. (a).)

[12] Paragraph 59 of the petition, found in the second cause of action, states, "The City has failed to require the enforcement of numerous conditions of the Project's approval, including, but not limited to, the requirement that: . . . (2) the applicant provide a mechanism to preserve the natural open space areas in perpetuity. . . ."

[13] Paragraph 69 of the petition, found in the third cause of action, states, "The City approved the Final Tract Maps when many of the Project's conditions of approval remain unfulfilled, including, but not limited to, the requirement that: (1) the applicant provide a mechanism to preserve the natural open space areas in perpetuity . . . ."

Plan, and thereby violated CEQA. Thus, the CEQA cause of action was merely another vehicle for challenging the City's failure to require the applicant to implement open space and other mitigation measures that were part of the Project's conditions of approval and of the Specific Plan. Friends not only could have brought this claim under the SMA rather than CEQA, it in fact did, in causes of action two through four. Under *Legacy Group*, then, Friends was required to comply with the 90-day summons requirement for the CEQA cause of action, because it both overlapped with the SMA causes of action and could have been (and was) brought under the SMA.

### 4.  *Motion for Sanctions*

We now consider the motion for sanctions. On September 28, 2007, the owners of the La Sierra Lands filed with this court a motion to dismiss the appeal as frivolous on the basis that "any reasonable attorney would agree that the appeal is totally and completely without merit." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 [183 Cal.Rptr. 508, 646 P.2d 179].) These landowners sought as sanctions (1) $27,583 in attorney fees; (2) $16 million for the loss in market value of the property within the Project; and (3) out-of-pocket expenses for loan payments and taxes in the amount of $403,254.86, plus $1,248.82 per day since September 1, 2007. After giving all parties an opportunity to respond, this court, by order dated December 28, 2007, denied the motion to dismiss and reserved the motion for sanctions for consideration with this appeal.

■ "[A]n appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit. [Citation.] [¶] However, any definition must be read so as to avoid a serious chilling effect on the assertion of litigants' rights on appeal. Counsel and their clients have a right to present issues that are arguably correct, even if it is extremely unlikely that they will win on appeal. An appeal that is simply without merit is *not* by definition frivolous and should not incur sanctions. Counsel should not be deterred from filing such appeals out of a fear of reprisals." (*In re Marriage of Flaherty, supra,* 31 Cal.3d at p. 650.) Moreover, "the punishment should be used most sparingly to deter only the most egregious conduct." (*Id.* at p. 651.) Weighing the chilling effect of sanctions against the issues raised in this appeal, and finding that a reasonable attorney may well have believed the appeal had some merit, we conclude that sanctions are not justified. The motion for sanctions is denied.

## Disposition

The judgment of the trial court is affirmed. The City and Real Parties in Interest shall recover their costs on appeal.

Gaut, J., and King, J., concurred.