Filed 12/14/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| AIDS HEALTHCARE FOUNDATION,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CITY OF LOS ANGELES et al.,<br><br>    Defendants and Respondents. | B311144<br><br>(Los Angeles County<br>Super. Ct. No. 20STCV29238) |

        APPEAL from a judgment of the Superior Court of
Los Angeles County, Rupert A. Byrdsong, Judge.  Affirmed.
        Thomas A. Myers, Jonathan M. Eisenberg, Kirra N. Jones
and David M. Gruen for Plaintiff and Appellant.
        Michael N. Feuer, City Attorney, Scott Marcus, Chief
Assistant City Attorney, Blithe S. Bock, Managing Assistant City
Attorney, Michael M. Walsh, Deputy City Attorney, for
Defendants and Respondents.

———————————————

## INTRODUCTION

This appeal pits the anti-corruption objectives of the Political Reform Act of 1974 (PRA) (Gov. Code, § 81000 et seq.) against the desire for certainty in real estate development that animates the 90-day statute of limitations period in Government Code sections 65009 and 66499.37. Appellant AIDS HealthCare Foundation (AHF) challenges land use decisions by the Los Angeles City Council planning and land use management (PLUM) committee, made while two of its members allegedly were the beneficiaries of an extensive, ongoing bribery scheme directed at PLUM committee projects. AHF contends the three-year catch-all statute of limitations in Code of Civil Procedure section 338, subdivision (a), applies to those PRA claims. Respondents City of Los Angeles and the Los Angeles City Council (collectively the City)[1] assert that the more specific 90-day statutes of limitation in Government Code sections 65009 and 66499.37 apply.[2] In particular, section 65009 governs any action designed to "attack, review, set aside, void, or annul" a wide variety of land use decisions, including "to adopt or amend a general or specific plan," zoning, development agreements, and any conditions attached to variances, conditional use permits, "or any other permit." (§ 65009, subd. (c).) The trial court, following precedent involving a predecessor statute to section 65009, agreed with the City, sustained the City's demurrer without leave to amend, and dismissed the case. We affirm.

---

[1] Although not listed as a party on the complaint's caption page, the pleading identifies Los Angeles Mayor Eric Garcetti as an additional defendant sued in his official capacity.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The PLUM Committee*

The PLUM committee consists of five councilmembers from the 15-member Los Angeles City Council.[3] It oversees the Planning Department's development of land use plans and zoning and environmental review laws. The PLUM committee also reviews and votes on proposed real estate projects that seek discretionary approvals. These approvals often require "overruling the usual planning and zoning rules that apply to average residents and small businesses of the City." The PLUM committee holds considerable sway over the hearing of real estate development projects because, after the PLUM committee issues its recommendation to the city council, the clerk puts the item on a "consent-type section" of the meeting. From there, if no councilmember requests the full City Council hold a hearing about the project, the City Council approves the item in a "quick mass vote without public comment." "These votes happen so fast that often times the public attending the hearing does not even realize it has occurred." The chair of the PLUM committee has particular power because the chair exercises control over the committee agenda and "can be a single bottleneck for whether or not a real estate project receives a hearing and goes on to City Council with a positive recommendation."

---

[2] Further statutory references are to the Government Code unless otherwise designated.

[3] We draw our recitation of the factual background from AHF's complaint.

3

B. *Corruption on the PLUM Committee*

In 2020 a federal criminal investigation revealed that two former city councilmembers, Jose Huizar and Mitchell Englander, allegedly engaged in bribery and other corruption in connection with their work on the PLUM committee.

Englander sat on the PLUM committee from 2012 until his resignation in October 2018. In January 2020, after a five-year investigation, a federal grand jury indicted Englander for falsifying material facts, making false statements, and witness tampering. The indictment alleged that Englander had accepted tens of thousands of dollars of cash bribes in the bathrooms of a Las Vegas casino, plus additional bribes of hotel rooms and other gifts from a businessman while on trips to Palm Springs and Las Vegas with several people, including a real estate developer. Englander pleaded guilty to federal charges for obstruction of justice.

Huizar sat on the PLUM committee as a member and/or its chair from 2007 until his removal in November 2018. In June 2020 federal law enforcement arrested Huizar on corruption charges, including racketeering, bribery, and money laundering. According to the Los Angeles Times, federal prosecutors alleged that, beginning in 2013, Huizar exploited his position of power on the PLUM committee "'to run a team of aid[e]s, consultants and other associates who extracted an enormous amount of cash and campaign donations, multiple casino trips and other personal indulgences from real estate developers.'" Huizar stands accused of accepting $1.5 million in bribes, gifts, and other inducements from real estate developers "to steer their projects for approval" through the PLUM committee and ultimately the City Council.

Around the same time as Huizar's arrest, the City commenced "'revocation proceedings of approvals'" as to one real estate development project in downtown Los Angeles linked to the criminal charges.  Soon, prosecutors identified another project implicated in Huizar's illicit behavior.  AHF alleges the corruption taints at least two other projects.  In addition, the Los Angeles City Attorney is investigating other real estate development projects with possible ties to the scandal, and other city councilmembers have requested a formal review of such projects.  AHF summarizes these events as an "ongoing corruption scandal regarding the approval of real estate projects" in Los Angeles.

C. *AHF's Claims*

On August 4, 2020, nearly two years after either Englander or Huizar last sat on the PLUM committee or took any official act, AHF, a nonprofit organization[4] with its headquarters in Los Angeles, filed the instant action against the City.  AHF alleged two causes of action:  (1) injunctive relief for violation of the PRA, and (2) taxpayer action to prevent waste (Code Civ. Proc., § 526a).  In the first cause of action, AHF alleged that, if the accusations against Huizar and Englander prove true, their misconduct violated the PRA, "including but not limited [to Government Code] section 87100."  AHF further alleged that because both Huizar and Englander sat on the PLUM committee, each had "the ability and influence to approve or disapprove real estate projects."  AHF asserted that, pursuant to section 91003, the court is "empowered to 'restrain the execution of any official

_____

[4]     AHF provides affordable housing to formerly homeless and low-income individuals and advocacy on issues of affordable housing, homelessness, and gentrification.

5

action in relation to which such a violation occurred'" and that "[t]his includes the restraining of permits." AHF thus "seeks an order restraining building permits granted by the City of Los Angeles during" the period of time when Huizar and/or Englander "sat on the PLUM committee and engaged in violations of Government Code Section 81000 with respect to the permits." In its taxpayer waste cause of action, AHF also "seeks an Order restraining the City from utilizing any further taxpayer funds, personnel efforts, or resources with respect to these projects."

AHF prayed for preliminary and permanent injunctive relief prohibiting the City "from taking any further actions or expend[ing] any taxpayer funds to facilitate, review, process, or see to completion any building project approved during" Huizar's and/or Englander's tenure on the PLUM committee "and established to be engaged in violations of Government Code Section 81000 et seq. with respect to the project's approval." AHF also sought permanent injunctive relief "setting aside any project approval" made during Huizar's and/or Englander's time on the PLUM committee where "it is ultimately determined that a violation of Government Code Section 81000 et seq. has occurred and that the project might not otherwise [have] been approved." AHF prayed for its costs and attorneys' fees.

D.     *The City's Demurrer*

On September 23, 2020, the City demurred to AHF's complaint, identifying a number of purportedly incurable deficiencies. Central to this appeal, the City sought dismissal on the ground that the 90-day statutes of limitation contained in sections 65009 and 66499.37 barred AHF's claim. The City relied

6

heavily on a factually similar case, *Ching v. San Francisco Bd. of Permit Appeals* (1998) 60 Cal.App.4th 888 (*Ching*).

AHF opposed the demurrer, primarily by attempting to distinguish *Ching* factually and legally. AHF asserted the PRA's four-year statute of limitations contained in section 91011, subdivision (b), governed. AHF argued that applying the 90-day time bar applicable to land use permit challenges would constitute "an impermissible amendment of the PRA" and "decimate[]" the PRA's "robust enforcement mechanisms" including its "four-year statute of limitations." Counsel for AHF argued at the demurrer hearing that "[u]nder the Political Reform Act, under Government Code section 91011(b), there's an express statute of limitations of four years." AHF also argued that even if the 90-day statute of limitations applied, Huizar's "fraudulent concealment of his criminal acts" tolled the commencement of the limitations period until his June 2020 arrest, making AHF's August complaint timely even under the shorter statute of limitations.

On December 7, 2020, the trial court heard and sustained the City's demurrer without leave to amend, stating that the court "disagree[s] with plaintiff" and "believe[s] that *Ching* is controlling." The trial court issued its written judgment in favor of the City on December 29, 2020, dismissing AHF's action. AHF timely appealed.

## DISCUSSION

### A. *Standard of Review*

"We independently review the superior court's ruling on a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete

7

defense." (*Ivanoff v. Bank of America, N.A.* (2017) 9 Cal.App.5th 719, 725.) "We assume the truth of properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded, and matters that are judicially noticeable." (*Genis v. Schainbaum* (2021) 66 Cal.App.5th 1007, 1015; accord, *Ivanoff*, at p. 725.)

"The application of the statute of limitations on undisputed facts is a purely legal question," which, on appeal from a demurrer, requires that we "take the allegations of the operative complaint as true and consider whether the facts alleged establish [plaintiff's] claim is barred as a matter of law." (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191; accord, *San Diego Unified School Dist. v. Yee* (2018) 30 Cal.App.5th 723, 730.) "De novo review is also appropriate where, as here, the appeal involves a question of statutory interpretation." (*Lopez v. Friant & Associates, LLC* (2017) 15 Cal.App.5th 773, 777; accord, *Bruns v. E-Commerce Exchange, Inc.* (2011) 51 Cal.4th 717, 724.)

Where the trial court has sustained a demurrer without leave to amend, we must also "'determine whether or not the plaintiff could amend the complaint to state a cause of action.'" (*Das v. Bank of America, N.A.* (2010) 186 Cal.App.4th 727, 734.) However, "the burden falls upon the plaintiff to show what facts he or she could plead to cure the existing defects in the complaint. [Citation.] 'To meet this burden, a plaintiff must submit a proposed amended complaint or, on appeal, enumerate the facts and demonstrate how those facts establish a cause of action.'" (*Ibid.*; see *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 ["[t]he plaintiff has the burden of proving that an amendment would cure the defect"].)

B. *The 90-day Statute of Limitations in Section 65009 Bars AHF's Claims*

1. *The Political Reform Act*

The voters approved the PRA in 1974 as an initiative measure (Proposition 9). The PRA "'concern[ed] elections and different methods for preventing corruption and undue influence in political campaigns and governmental activities.'" (*Howard Jarvis Taxpayers Assn. v. Newsom* (2019) 39 Cal.App.5th 158, 162.)

Section 81700 of the PRA provides that "[a] public official at any level of state or local government shall not make, participate in making, or in any way attempt to use the public official's official position to influence a governmental decision in which the official knows or has reason to know the official has a financial interest." In addition to other types of permitted actions, section 91003, subdivision (a), provides that "[a]ny person residing in the jurisdiction may sue for injunctive relief to enjoin violations or to compel compliance with the provisions of this title." Subdivision (b) states, in relevant part, that "[u]pon a preliminary showing in an action brought by a person residing in the jurisdiction that a violation of Article 1 (commencing with Section 87100) . . . of this title . . . occurred, the court may restrain the execution of any official action in relation to which such a violation occurred, pending final adjudication. If it is ultimately determined that a violation has occurred and that the official action might not otherwise have been taken or approved, the court may set the official action aside as void. The official actions covered by this subsection include, but are not limited to, orders, permits, resolutions, and contracts . . . . In considering the granting of preliminary or permanent relief under this

9

subsection, the court shall accord due weight to any injury that may be suffered by innocent persons relying on the official action." (§ 91003, subd. (b).)

As originally enacted, the PRA included a two-year statute of limitations in section 91011 for civil actions brought pursuant to sections 91004 (reporting requirements) or 91005 (unlawful contributions, gifts, or expenditures and "economic benefits" realized from a conflict of interest), both of which provided for monetary damages. In 1980, the Legislature amended section 91011 to create subdivisions (a) and (b), the latter of which provided a statute of limitations period for civil actions other than those described in subdivision (a). That section now provides: "(a) No civil action alleging a violation in connection with a report or statement required by Chapter 4 (commencing with Section 84100) shall be filed more than four years after an audit could begin as set forth in subdivision (c) of Section 90002, or more than one year after the Franchise Tax Board forwards its report to the commission, pursuant to Section 90004, of any audit conducted of the alleged violator, whichever period is less. [¶] (b) No civil action alleging a violation of any provisions of this title, other than those described in subdivision (a), shall be filed more than four years after the date the violation occurred." (§ 91011.)

2. *Section 65009*

In contrast to the four-year statute of limitations contained in the PRA, section 65009 prescribes a 90-day statute of limitations to challenge certain land-use decisions. The shortened limitations period found in section 65009 predates the PRA by nearly a decade. In 1965, the legislature enacted former section 65907, the predecessor statute to section 65009. As

10

originally enacted, former section 65907 provided in relevant part: "Any action or proceeding to attack, review, set aside, void or annul any decision of matters listed in Sections 65901 and 65903, or concerning any of the proceedings, acts or determinations taken, done or made prior to such decision, or to determine the reasonableness, legality or validity of any condition attached thereto, shall not be maintained by any person unless the action or proceeding is commenced within 180 days after the date of such decision. Thereafter all persons are barred from any such action or proceeding or any defense of invalidity or unreasonableness of such decision or of such proceedings, acts or determinations." (Stats. 1965, ch. 1341, § 5, p. 3228.) In 1983, the Legislature shortened the 180 days to the current 90 days. (*Ching, supra,* 60 Cal.App.4th at p. 893, citing to Stats. 1983, ch. 1138, § 2, p. 4314.)

In 1996, the Legislature repealed former section 65907 and simultaneously moved its limitation language to what are now subdivisions (c)(1)(E) and (F) of section 65009. (*Ching, supra,* 60 Cal.App.4th at p. 892, fn. 2.) Like its predecessor, section 65009 bars any action attacking certain land use decisions after 90 days.[5] With specific exceptions not relevant here, section 65009 provides that "no action or proceeding shall be maintained in any of the following cases by any person" unless commenced and served "within 90 days after the legislative body's decision[.]" (§ 65009, subd. (c)(1).)

---

[5] Section 65009 is found in division 1 (Planning and Zoning) of title 7 (Planning and Land Use).

Subdivisions (c)(1)(A) through (F) then delineate a host of local land use and zoning cases to which the statute's 90-day time limit applies, including actions: "(A) To attack, review, set aside, void, or annul the decision of a legislative body to adopt or amend a general or specific plan . . . . [¶] (B) To attack, review, set aside, void, or annul the decision of a legislative body to adopt or amend a zoning ordinance. [¶] (C) To determine the reasonableness, legality, or validity of any decision to adopt or amend any regulation attached to a specific plan. [¶] (D) To attack, review, set aside, void, or annul the decision of a legislative body to adopt, amend, or modify a development agreement . . . . [¶] (E) To attack, review, set aside, void, or annul any decision on the matters listed in Sections 65901[6] and 65903,[7] or to determine the reasonableness, legality, or validity of any condition attached to a variance, conditional use permit, or any other permit. [¶] (F) Concerning any of the proceedings, acts, or determinations taken, done, or made prior to any of the decisions listed in subparagraphs (A), (B), (C), (D), and (E)." (§ 65009, subds. (c)(1)(A)-(F).)

---

6       Section 65901 provides, in pertinent part, that "[t]he board of zoning adjustment or zoning administrator shall hear and decide applications for conditional uses or other permits when the zoning ordinance provides therefor and establishes criteria for determining those matters, and applications for variances from the terms of the zoning ordinance." (§ 65901, subd. (a).) Section 65902 then provides "[i]n the event that neither a board of zoning adjustment or the office of a zoning administrator has been created and established, the planning commission shall exercise all of the functions and duties of said board or said administrator. [¶] The legislative body of a county may provide that an area planning commission shall exercise all of the

12

Confirming that "no action" means no action, the statute reiterates that "[u]pon the expiration of the time limits provided for in this section, all persons are barred from any further action or proceeding." (§ 65009, subd. (e).) The statute includes a statement of the underlying legislative intent and policy rationale for the 90-day bar: "The Legislature further finds and declares that a legal action or proceeding challenging a decision of a city, county, or city and county has a chilling effect on the confidence with which property owners and local governments can proceed with projects." (§ 65009, subd. (a)(2).) The statute further makes clear "[t]he purpose of this section is to provide certainty for property owners and local governments regarding decisions made pursuant to this division." (§ 65009, subd. (a)(3).)

3. *Section 65009's Broad Reach Controls*

Contrary to its argument in the trial court that the four-year statute of limitations in Government Code section 91011, subdivision (b), applies, AHF now declares it "beyond dispute" the *three-year* statute of limitations contained in Code of Civil Procedure section 338, subdivision (a), a catch-all for liabilities created by statute, governs its action. AHF asserts "[i]t is not disputed that claims brought under Government Code section 91003 . . . have a limitations period of three years," citing Code of Civil Procedure section 338, subdivision (a). However, AHF hedges its bets, stating that "[a]ssuming [Government Code

---

functions and duties of a board of zoning adjustment or a zoning administrator in a prescribed portion of the county."

7      Section 65903 provides, "[a] board of appeals, if one has been created and established by local ordinance, shall hear and determine appeals from the decisions of the board of zoning adjustment or the zoning administrator."

section 91011, subdivision (b)] is applicable to this action" AHF's arguments regarding voter intent and statutory construction "apply equally."

The City contends, and the trial court ruled, that section 65009's 90-day limitations period bars AHF's claims. We agree.

By its plain language, section 65009's 90-day limitation on a broad variety of challenges to land use and zoning decisions encompasses AHF's action to challenge and set aside certain unidentified "building permits granted by the City" over an 11-year period that "would not have been approved in their current form but for the misconduct of Councilmembers Huizar and Englander." Nevertheless, AHF maintains section 65009 does not apply, in part because it brought its action pursuant to the PRA.

The *Ching* court, relied on by the City and the trial court in its ruling, confronted and rejected an identical argument. (*Ching*, *supra*, 60 Cal.App.4th 888.) In *Ching*, the plaintiff sought to vacate a permit appeals board's decision to grant a developer's application for a conditional use permit, based on a board member's conflict of interest in violation of the PRA. (*Id.* at p. 891.) Like AHF here, the plaintiff in *Ching* equivocated as to which statute of limitations applied, first arguing in opposition to the board's demurrer that the three-year time bar in Code of Civil Procedure section 338, subdivision (a), applied, and then on appeal contending the four-year statute of limitations in Government Code section 91011, subdivision (b), governed. (*Id.* at p. 892.) The *Ching* court rejected both contentions. (*Ibid.* ["neither the four-year statute of section 91011 nor the three-year statute of Code of Civil Procedure section 338, subdivision (a)

14

applies."].)  Rather, *Ching* determined that the 90-day limitations period prescribed by former Government Code section 65907 for challenges to a broad variety of local land use decisions controlled.  (*Id.* at p. 891.)

While agreeing that some PRA claims fall within a three- or four-year statutes of limitation, *Ching* rejected the argument that a PRA claim changes the limitations period for land use actions governed by former section 65907 (now 65009).  First, "former section 65907 'contains no exceptions,' and uses 'unqualified language' manifesting a plain intent on the part of the Legislature 'to limit the time to seek review' of an agency decision.  There is no exception for actions filed under the Political Reform Act."  (*Ching, supra,* 60 Cal.App.4th at pp. 894-895.)  Second, "[i]t is a basic rule of statutory construction that specific statutes control general ones."  (*Id.* at p. 895, citing Code Civ. Proc., § 1859 ["when a general and [a] particular provision are inconsistent, the latter is paramount to the former"].)  Even if the catch-all time bar of Code of Civil Procedure section 338, subdivision (a), might normally have applied, "the specific 90-day statute of limitations period set by former section 65907 controls over the 3-year [statute of] limitations in cases challenging decisions of a local board of permit appeals."  (*Ching*, at p. 896, citing to *In re Williamson* (1954) 43 Cal.2d 651, 654 ["'It is the general rule that where the general statute standing alone would include the same matter as the special act, and thus conflict with it, the special act will be considered as an exception to the general statute whether it was passed before or after'"].)

*Ching* thus concluded "an action or proceeding under the Political Reform Act challenging a local permit appeal board decision must comply with the specific limitations provisions of former section 65907." (*Ching*, *supra,* 60 Cal.App.4th at pp. 895-896 ["[t]he 90-day period established by former section 65907 thus preempts any longer period set under the Political Reform Act"].)

Other courts have reached similar conclusions.[8] In *California Standardbred Sires Stakes Com., Inc. v. California Horse Racing Bd.* (1991) 231 Cal.App.3d 751, 755, also cited by the *Ching* court, the plaintiff promoted breeding of standardbred horses. It sought a writ of mandamus to compel the California Horse Racing Board (Board) to issue a license for a racing meet (the source of the plaintiff's funding). The plaintiff sought relief based on an alleged conflict of interest, which it argued violated the PRA. The Board demurred, arguing that Business and Professions Code section 19463 provided a 30-day statute of limitations to challenge the Board's action. The plaintiff did not dispute the application of the shorter limitations period; rather, it argued equitable tolling should extend its time to file. The court of appeal in *California Standardbred* dismissed the PRA claim as untimely. (*Ibid.*)

In *Howard Jarvis Taxpayers Assn. v. City of Los Angeles* (2000) 79 Cal.App.4th 242, 248, disapproved on other grounds in *Ardon v. City of Los Angeles* (2011) 52 Cal.4th 241, 250, the plaintiffs challenged a tax ordinance. They argued the ordinance

---

[8] Among them, *AIDS Healthcare Foundation, Inc. v. City and County of San Francisco* (N.D.Cal. 2016) 208 F.Supp.3d 1095, 1102, where section 65009 barred AHF's untimely challenge to a planning commission disapproval of a conditional use permit.

16

violated Proposition 218, a voter initiative which amended the California Constitution to require the electorate to vote on, and approve, any new tax. (*Howard Jarvis Taxpayers Assn.,* at p. 245 & fn. 1.) The court held the 90-day time bar set forth in section 65009 precluded the suit even though the plaintiffs claimed the ordinance violated the constitutional limitations in Proposition 218. (*Id.* at p. 248.) The court, like *Ching*, rejected the contention that the general three-year statute of limitations found in subdivision (a) of Code of Civil Procedure section 338 should govern, noting that "it is well settled that where, as here, a specific limitations period applies, the more general period codified in Code of Civil Procedure section 338 is inapplicable." (*Ibid.*)

The City cites another statute of limitations, section 66499.37,[9] part of the Subdivision Map Act (SMA), which contains similar broad language requiring that "[a]ny action or proceeding to attack, review, set aside, void, or annul" decisions "concerning a subdivision" must be brought within 90 days. The parties do not specifically address the extent to which any of the

---

[9] In pertinent part, section 66499.37 provides that "[a]ny action or proceeding to attack, review, set aside, void, or annul the decision of an advisory agency, appeal board, or legislative body concerning a subdivision, or of any of the proceedings, acts, or determinations taken, done, or made prior to the decision, or to determine the reasonableness, legality, or validity of any condition attached thereto . . . shall not be maintained by any person unless the action or proceeding is commenced and service of summons effected within 90 days after the date of the decision. Thereafter all persons are barred from any action or proceeding or any defense of invalidity or unreasonableness of the decision or of the proceedings, acts, or determinations."

permits considered by the PLUM committee might implicate the SMA. However, given that section 66499.37's broad statutory mandate closely resembles section 65009, cases addressing its applicability are instructive.

For example, the court in *Presenting Jamul v. Board of Supervisors* (1991) 231 Cal.App.3d 665, 671, noted that "the Legislature by design drafted section 66499.37 broadly" and "[c]onsequently, regardless of the nature of or label attached to the action challenging the legislative body's subdivision-related decision, the action is governed by section 66499.37." (*Id.* at p. 671 ["[t]he broad language the Legislature employed within section 66499.37 was specifically designed to include any challenge, regardless whether procedural or substantive in character"].) The court found the plaintiffs' three causes of action untimely given each "challenges either directly or indirectly the propriety or correctness of the Board's . . . decision" and thus "[r]egardless of the varying legal stratagems in the causes of action . . . each was designed to set aside or annul the Board's . . . decision." (*Id.* at p. 672.)

C. *The Gravamen of the Case Implicates the 90-day Statute*

To avoid section 65009, AHF contends that, notwithstanding its ultimate goal of invalidating any illicitly-obtained building permits, the gravamen of its action "is not principally a challenge to the permit decision, but instead is a challenge to the corruption."

True, the gravamen of AHF's action dictates the applicable statute of limitations. (See *Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 22-23 (*Hensler*) ["To determine the statute of limitations which applies to a cause of action it is necessary to identify the nature of the cause of action, i.e., the 'gravamen' of

18

the cause action [citations] . . . . [T]he nature of the right sued upon and not the form of action nor the relief demanded determines the applicability of the statute of limitations under our code"].) *Hensler* rejected a plaintiff's attempt to avoid the statutory reach of section 66499.37 by couching his challenge to an ordinance as a taking for which he sought damages. (*Ibid*.) The Supreme Court explained that "[e]very appellate decision which has considered the issue in a case involving a controversy related to a subdivision has held that section 66499.37 is applicable no matter what the form of the action." (*Id*. at pp. 26-27; see *Aiuto v. City and County of San Francisco* (2011) 201 Cal.App.4th 1347, 1358 [the key factor in appellate decisions consistently applying section 66499.37 in cases involving controversies related to a subdivision was that "whatever wrong was claimed in the complaint or whatever relief was sought, the gravamen of the complaint was an attack on a subdivision-related decision under the SMA"].)

Section 65009 has a similar reach. In *Freeman v. City of Beverly Hills* (1994) 27 Cal.App.4th 892, 897, the Court of Appeal rejected the plaintiffs' attempt to side-step the time bar of section 65009 by arguing their underlying cause of action was one for monetary damages rather than for direct invalidation of the challenged zoning ordinance. *Freeman* made clear that "[t]he Legislature intended to foreclose any and all challenges to the validity of zoning ordinances unless they were filed promptly. Thus, it used very broad language in defining the kinds of challenges which had to be made within 120 days. . . . A lawsuit seeking monetary damages on this basis is both an 'attack' on the decision and an attempt to obtain a judicial 'review' of that decision." (*Id*. at p. 897.)

The same rationale applies here.  While AHF may challenge corruption under the PRA, the gravamen of AHF's action is an attack on, or review of, the PLUM committee's decisions related to permitting and real estate project approvals. Section 65009 applies directly to that challenge.[10]  AHF cannot escape the statutory time bar by couching its claim as "necessarily dependent on a finding of a violation of the PRA" when the violation itself involves challenging the PLUM committee's project approvals.

D. *Applying the 90-day Limitations Period Does Not Unconstitutionally Amend the PRA*

AHF argues that applying the 90-day statute of limitations to its PRA claim would amount to an unconstitutional legislative amendment to a duly-enacted voter initiative.  AHF concedes on appeal that the time bar in Government Code sections 65009 and 66499.37 predate the PRA, and thus did not amend it, but still insists that "the use and application of these sections does work as a practical amendment of the text of the PRA."  This argument suffers from temporal and logical problems.

The California Constitution provides, in relevant part, that "The Legislature may amend or repeal an initiative statute by another statute that becomes effective only when approved by the electors unless the initiative statute permits amendment or repeal without the electors' approval."  (Cal. Const., art II, § 10, subd. (c).)  As the Supreme Court explained in *People v. Kelly* (2010) 47 Cal.4th 1008, 1025, "'The purpose of California's constitutional limitation on the Legislature's power to amend initiative statutes is to "protect the people's initiative powers by

---

[10]    At oral argument, AHF conceded that the PLUM committee decisions it challenges fall within the scope of section 65009.

20

precluding the Legislature from undoing what the people have done, without the electorate's consent.""'" However, the Legislature "is not thereby precluded from enacting laws addressing the general subject matter of an initiative" and thus "remains free to address a '"related but distinct area"' [citations] or a matter that an initiative measure 'does not specifically authorize *or* prohibit.'" (*Id.* at pp. 1025-1026.) "[F]or purposes of article II, section 10, subdivision (c), an amendment includes a legislative act that changes an existing initiative statute by taking away from it." (*Id.* at pp. 1026-1027.)

AHF does not fully account for the permissible parameters of legislative amendment. In quoting section 81012, AHF only cites subdivision (b) for the proposition that the PRA may be amended or repealed by statute "approved by the electors." However, AHF's briefing omits subdivision (a), which provides that the Legislature may also amend the PRA, albeit by two-thirds vote in each house and the Governor's signature, prior distribution of the proposed bill to the Fair Political Practices Commission, and only so long as the amendment "further[s] its purposes." (§§ 81012; 82012.) Some ballot initiatives strictly reserve the amendment power solely to the electors. The PRA does not. Indeed, by 2010 the Legislature already had amended the PRA over 200 times. (*People v. Kelly, supra,* 47 Cal.4th at p. 1043, fn. 59.)

Putting aside this permissible legislative amendment process, we cannot reasonably construe the 90-day local land use statute of limitations as an improper amendment to, or curtailing of, the PRA.

First, as explained above, the 90-day time bar currently codified in section 65009 pre-dates the PRA by almost 10 years.

21

The Legislature obviously could not impermissibly have undone or taken away from a voter initiative that did not yet exist.

Second, the Legislature added subdivision (b) of section 91011 to the PRA in 1980, so that broader statute of limitations was "not part of the rest of the initiative legislation creating the Political Reform Act." (*Ching, supra,* 60 Cal.App.4th at p. 895.) Nevertheless, in the trial court, AHF argued this legislative amendment created the operative statute of limitations for this case. AHF does not explain how the legislative amendment it relied on in the trial court could be valid, but the other statute that purportedly amends the PRA is not valid. The Legislature enacted both. Regardless, as the *Ching* court properly concluded, "Thus . . . section 91011, subdivision (b) does not automatically control over the 90-day limitation period set by former section 65907 as a matter of the state constitutional law applicable to initiative statutes." (*Ching,* at p. 895.) Even putting aside the temporal problems with AHF's argument noted above, its "practical amendment" theory fails for this additional reason.

Moreover, even if we assume that when the electorate passed the PRA, it intended for the existing catch-all statute of limitations from section 338, subdivision (a), of the Code of Civil Procedure to apply, we must also assume the electorate knew about, and did nothing to expressly abrogate, the shortened limitations period in former section 65907. (See *People v. Gonzales* (2018) 6 Cal.5th 44, 49-50 ["a ballot initiative is governed by the same principles that apply in construing a statute enacted by the Legislature . . . [and] we presume that the 'adopting body' is aware of existing laws when acting a ballot initiative"].) Thus, the application of the pre-existing shorter statute of limitations does not "practically amend" section 91011,

22

subdivision (b), or any other part of the PRA.  Section 65009 does not conflict with, or otherwise take away from, the original PRA, practically or otherwise.

     E. *Policy Considerations Do Not Override Clear Statutory Language*

     Finally, AHF advances certain policy reasons for permitting a longer period of time to "discover and ferret out corruption."[11]  In this case, we do not reach the competing public policy goals at work in the PRA and section 65009.  "'Our fundamental task in interpreting a statute is to determine the Legislature's intent so as to effectuate the law's purpose.' [Citation.]  We start with the words of the statute, giving them their plain and ordinary meaning.  [Citation.]  'If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.'" (*Lopez v. Friant & Associates, LLC, supra,* 15 Cal.App.5th at p. 779; accord, *Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737.)

---

[11]    AHF also claims the PRA already addresses concerns that undoing government action taken a decade or more ago will prove disruptive because "[i]n considering the granting of preliminary or permanent relief under this subsection, the court shall accord due weight to any injury that may be suffered by innocent persons relying on the official action." (§ 91003, subd. (b).) However, the "due weight" directive does not overwrite an otherwise applicable and controlling statute of limitation.

23

Here, "[t]he Legislature intended the limitation period stated in former section 65907 to permit no exception." (*Ching, supra*, 60 Cal.App.4th at p. 896.) Accordingly, like *Ching,* we must enforce the 90-day time bar. We affirm the trial court's dismissal of AHF's PRA cause of action, without leave to amend.[12] The trial court properly dismissed AHF's complaint[13] as time barred by section 65009, the applicable 90-day statute of limitations in this action.

---

[12] In the proceedings below AHF contended that Huizar and Englander's fraudulent concealment ought to toll any applicable statute of limitations, and that if the requisite allegations were not pleaded in its complaint, leave to amend should be granted "to provide more detailed allegations for this defense to the statute of limitations." AHF does not raise, and therefore forfeits, these contentions on appeal. (See *Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4 [issue not raised on appeal deemed forfeited or waived]; accord, *Sierra Palms Homeowners Assn. v. Metro Gold Line Foothill Extension Construction Authority* (2018) 19 Cal.App.5th 1127, 1136.)

[13] As to its second cause of action, AHF "concedes that its taxpayer waste claim is dependent" and "predicated and conditioned upon" the validity "of a PRA violation." Given our ruling that section 65009 bars AHF's PRA claim, then, by AHF's admission its dependent taxpayer waste claim must also fall.

## DISPOSITION

The judgment is affirmed.  The City is to recover its costs on appeal.


HOWARD, J.*


We concur:



PERLUSS, P. J.



SEGAL, J.

---

\*      Judge of the Marin County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.