Filed 10/21/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| SANTA CLARITA ORGANIZATION FOR PLANNING THE ENVIRONMENT et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> COUNTY OF LOS ANGELES, <br><br> Defendant and Respondent; <br><br> WILLIAMS HOMES, INC., <br><br> Real Party in Interest and Respondent. | B331779 <br><br> (Los Angeles County Super. Ct. No. 22STCP01433) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mitchell L. Beckloff, Judge. Reversed and remanded with directions.

Advocates for the Environment and Dean Wallraff for Plaintiffs and Appellants.

Dawyn R. Harrison, County Counsel, Starr Coleman, Assistant County Counsel, and Thomas R. Parker, Senior Deputy County Counsel, for Defendant and Respondent County of Los Angeles.

Cox, Castle & Nicholson, David P. Waite, Alexander M. DeGood, Kenneth B. Bley, and Eric J. Cohn for Real Party in Interest and Respondent Williams Homes, Inc.

_____

Santa Clarita Organization for Planning the Environment and Advocates for the Environment (collectively, SCOPE) appeals from a judgment in favor of the County of Los Angeles and Williams Homes, Inc. (Williams) following the trial court's grant without leave to amend of Williams's motion for judgment on the pleadings on SCOPE's petition for writ of mandate. SCOPE's lawsuit challenged the County's approval of a conditional use permit, an oak tree permit, and a vesting tentative tract map for a proposed residential housing development in an unincorporated area of the Santa Clarita Valley (the Project).

The trial court found Government Code section 66499.37[1] of the Subdivision Map Act (SMA; Gov. Code, § 66410 et seq.) barred SCOPE's causes of action for violations of the SMA *and*

---

[1]     Further undesignated statutory references are to the Government Code.

the California Environmental Quality Act (CEQA; Pub. Resources Code, § 21000 et seq.) because SCOPE failed to serve a summons on the County and Williams within 90 days of the County's approval of the vesting tentative tract map. Section 66499.37 requires service of a summons within 90 days of approval of a project for any action challenging a decision of a legislative body, advisory agency, or appeal board "concerning a subdivision" or "the reasonableness, legality, or validity of any condition attached" to an approval of a subdivision or tentative or final map.

On appeal, SCOPE contends section 66499.37 does not apply to the first cause of action under CEQA because its CEQA claims do not "concern a subdivision" within the meaning of section 66499.37. SCOPE is partially correct in that there must be some connection to the SMA: Section 66499.37 applies to claims that arise from or involve a controversy under the SMA, could have been brought under the SMA, or overlap with an SMA claim. Section 66499.37 also applies to an action challenging the reasonableness, legality, or validity of a condition imposed as part of approval under the SMA of a subdivision or tentative or final map. In this case, section 66499.37 does not bar SCOPE's CEQA claims to the extent the petition alleges procedural violations of CEQA (for example, lack of adequate notice of the mitigated negative declaration) and the County's failure to analyze and disclose the Project's environmental impacts, all of which are unique to CEQA and could not have been brought under the SMA. However, to the extent the petition challenges the reasonableness of the conditions of approval of the vesting tentative tract map (here, specific mitigation measures adopted

3

as a condition of approval), the limitations period under section 66499.37 applies.

Given the complexity of the question whether a CEQA challenge to approval of a vesting tentative tract map for a subdivision is subject to the summons requirement under the SMA, petitioners challenging approval of a tentative or final map proceed at their peril if they fail to obtain and serve a summons within 90 days of the approval. SCOPE could have avoided entry of a judgment against it had SCOPE obtained and served a summons on the County and Williams within 90 days, which obligation is not onerous given the requirement under CEQA that the petitioner serve the petition within 30 days after the County files a notice of determination. (Pub. Resources Code, § 21167, subd. (b).)

Because a motion for judgment on the pleadings must dispose of the entire cause of action, however, the trial court erred in granting the motion as to the CEQA cause of action because only a portion of the cause of action is barred by the SMA limitations period. We reverse the judgment and remand for the trial court to enter a new order denying the motion for judgment on the pleadings with respect to the first cause of action for violation of CEQA and granting the motion with respect to the second cause of action for violation of the SMA and zoning and planning law.

## FACTUAL AND PROCEDURAL BACKGROUND

A.  *The Project Approval*

In 2018 Pico Canyon, LLC sought approval from the Los Angeles County Board of Supervisors (Board) of a conditional use

4

permit, an oak tree permit, and a vesting tentative tract map for the Project that would subdivide 94.38 acres of open space into 45 lots for development of 37 single-family homes, six public facilities, and two open spaces in an unincorporated area of the Santa Clarita Valley.  Prior to the Board's public hearing on the Project, the staff of the County Department of Regional Planning prepared an initial study under CEQA to assess the Project's potential environmental impacts.  The staff determined the Project "could have a significant effect on the environment" but a mitigated negative declaration (MND) was the appropriate document to address the Project's environmental impacts.  The Board found the mitigation measures contained in the mitigation monitoring and reporting program prepared for the Project (Mitigation Program) would ensure the Project would not have a significant effect on the environment.

On March 15, 2022 the Board approved the permits and the vesting tentative tract map with conditions, including compliance with the Mitigation Program,[2] adopted the MND, and certified the MND complied with CEQA and the CEQA Guidelines (Cal.

---

[2]     "A subdivider may file a 'vesting tentative map' whenever the Subdivision Map Act requires a tentative map.  [Citation.]  The vesting tentative map statute was enacted to 'establish a procedure for the approval of tentative maps that will provide certain statutorily vested rights to a subdivider' (§ 66498.9, subd. (a)) and to 'ensure that local requirements governing the development of a proposed subdivision are established in accordance with Section 66498.1 when a local agency approves or conditionally approves a vesting tentative map.' (§ 66498.9, subd. (b).)"  (*Honchariw v. County of Stanislaus* (2020) 51 Cal.App.5th 243, 254, fn. omitted.)

5

Code Regs., tit. 14, § 15000 et seq.).[3]  In early 2022 Williams purchased the property from Pico Canyon, LLC.  The March 22, 2022 notice of determination for the Project identified both Pico Canyon, LLC and Williams as the Project applicants.

B.  *The Petition for Writ of Mandate*

On April 20, 2022 SCOPE filed a verified petition for writ of mandate against the County, Williams, and Pico Canyon, LLC.[4] The first cause of action alleged the approval of the MND violated CEQA because it "failed to disclose, analyze, and mitigate many of the Project's significant environmental impacts."  SCOPE alleged there were environmental impacts related to fire hazards, wildlife habitat connectivity, mountain lions, rare and threatened plant species, hydrology and water supply, open space and trails, air quality, transportation, greenhouse gases, and noise.  SCOPE further alleged there was substantial evidence these environmental impacts may be significant, requiring preparation of an environmental impact report (EIR).  In addition, "[s]ome of the approved mitigation measures are vague, deferred, or inadequate to truly mitigate the Project's impacts."  Specifically, SCOPE alleged the mitigation measures in the Mitigation Program with respect to wildfire impacts, mountain lions, rare plant species, wetlands, and noise were inadequate.

SCOPE also alleged the County violated five procedural CEQA requirements: (1) failure to provide notice of intent to

---

[3]  Further citations to the CEQA Guidelines are to title 14 of the California Code of Regulations.

[4]  At SCOPE's request, on March 6, 2023 the trial court dismissed Pico Canyon, LLC from the action with prejudice.

6

adopt the revised MND at a May 19, 2021 regional planning commission hearing; (2) failure to provide the May 12, 2021 version of the MND to CEQAnet;[5] (3) failure to recirculate the MND following the August 2021 discovery of a mountain lion at the Project site; (4) misleading and confusing the public and decision makers by using different numbers to identify the mitigation measures in the MND and the Mitigation Program; and (5) failure to consult with the Santa Monica Mountains Conservancy.

The second cause of action for "violation of planning and zoning law" (capitalization and boldface omitted) alleged the Project was inconsistent with (1) Los Angeles County Code section 21.24.020, which imposes limits on the number of dwelling units for projects that have only a single route of access from a street system to a highway; (2) the Antelope Valley Area Plan's limitations on density for areas designated as very high fire hazard severity zones; and (3) the Los Angeles County General Plan policies discouraging urban sprawl and development in areas with high environmental resources and severe fire and other safety hazards. The petition also alleged the Project violated three sections of the SMA, including section 66474.02, which prohibits approval of a tentative map unless the subdivision and lots comply with regulations adopted for forestry and fire protection.

SCOPE requested a peremptory writ of mandate (1) directing the County to set aside and vacate adoption of the

---

[5]   CEQAnet is "the California State Clearinghouse's searchable online" database of CEQA documents. (*El Morro Community Assn. v. California Dept. of Parks & Recreation* (2004) 122 Cal.App.4th 1341, 1358.)

7

MND for the Project; (2) directing the County to set aside and vacate all approvals of the Project, including the vesting tentative tract map, the conditional use permit, and the oak tree permit; (3) ordering the County to prepare and certify a legally adequate EIR; and (4) ordering the County and Williams to "cease any and all activity related to the Project that may result in a physical change to the environment until the Project is re-approved following the certification of a legally sufficient EIR for the Project."

On February 14, 2023 SCOPE filed an opening brief challenging the County's adoption of the MND on the basis it failed to analyze and mitigate the Project's environmental impacts. The brief also argued the Project did not comply with the fire-access requirements of Los Angeles County Code section 21.24.020 that limited the number of dwelling units to 75 houses with a single route of access to a highway, because adding 37 houses under the Project would result in 77 houses using one route. SCOPE did not otherwise address the second cause of action for planning and zoning law and SMA violations. SCOPE requested that the trial court order the County to set aside its approvals of the MND and the Project and to prepare an EIR for the Project.

C.    *Williams's Motion for Judgment on the Pleadings*

On March 16, 2023 Williams filed a motion for judgment on the pleadings. Williams argued dismissal of the petition was mandatory because SCOPE failed to serve a summons on Williams or the County within 90 days of the County's approval of the vesting tentative tract map as mandated by section 66499.37. Williams maintained both the SMA and CEQA

causes of action were barred under section 66499.37 because the petition challenged the County's approval of the Project and the vesting tentative tract map, and therefore, each cause of action "concerns a matter addressed by the SMA." Moreover, the CEQA claims could have been brought under the SMA and were intertwined with the SMA claims.

In its opposition, SCOPE argued it did not obtain a summons when it filed its CEQA petition for writ of mandate because a summons is not required for an administrative mandamus proceeding, and instead, service of the petition confers jurisdiction. SCOPE asserted section 66499.37 did not apply to its CEQA claims because the claims did not arise under the SMA and could not have been brought under the SMA. With respect to the second cause of action for violations of planning and zoning law and the SMA, SCOPE argued that only paragraphs 129 to 131 of the petition (identified as "sub-claims") alleged violations of the SMA. SCOPE asserted as to these sub-claims that they "were not briefed in the Opening Brief, so they have been abandoned. In fact, the entire second claim was not briefed." SCOPE requested that if the trial court granted the motion for judgment on the pleadings, it should allow SCOPE leave to amend.

D.    *The Trial Court's Ruling and Judgment*

On April 12, 2023 the trial court held a hearing on Williams's motion, and, following argument from the attorneys, the court took the matter under submission. On May 26, 2023 the court granted the motion without leave to amend. The court found the County's approval of the vesting tentative tract map "necessarily required a finding of CEQA compliance"; the

9

Mitigation Program was a condition of approval of the [vesting tentative tract map]"; and "even though styled as a CEQA claim, the proceeding is an attempt to set aside . . . the County's decision concerning a subdivision."

On June 27, 2023 the trial court entered judgment in favor of the County and Williams and against SCOPE on the two causes of action.  The judgment dismissed the petition with prejudice, denying leave to amend.

SCOPE timely appealed.

## DISCUSSION

A.    *Standard of Review*

"'A judgment on the pleadings in favor of the defendant is appropriate when the complaint fails to allege facts sufficient to state a cause of action.  [Citation.]  A motion for judgment on the pleadings is equivalent to a demurrer and is governed by the same de novo standard of review.'" (*People ex rel. Harris v. Pac Anchor Transportation, Inc.* (2014) 59 Cal.4th 772, 777; accord, *Starlight Cinemas, Inc. v. Massachusetts Bay Ins. Co.* (2023) 91 Cal.App.5th 24, 31.) "'"We treat the pleadings as admitting all of the material facts properly pleaded, but not any contentions, deductions or conclusions of fact or law contained therein."'" (*Tarin v. Lind* (2020) 47 Cal.App.5th 395, 403-404; accord, *Starlight Cinemas*, at p. 31.)

"The application of the statute of limitations on undisputed facts is a purely legal question" subject to de novo review.  (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191; accord, *AIDS Healthcare Foundation v. City of Los Angeles* (2022) 86 Cal.App.5th 322, 331.)  Further, "when the issue is one of

statutory interpretation, it presents a question of law that we review de novo." (*Segal v. ASICS America Corp.* (2022) 12 Cal.5th 651, 658; accord, *AIDS Healthcare Foundation*, at p. 331 ["'De novo review is also appropriate where, as here, the appeal involves a question of statutory interpretation.'"].)

"'Our fundamental task in interpreting a statute is to determine the Legislature's intent so as to effectuate the law's purpose.'" (*Prang v. Los Angeles County Assessment Appeals Bd.* (2024) 15 Cal.5th 1152, 1170; accord, *McHugh v. Protective Life Ins. Co.* (2021) 12 Cal.5th 213, 227.) "'We first consider the words of the statutes, as statutory language is generally the most reliable indicator of legislation's intended purpose.'" (*Prang*, at p. 1170; accord, *McHugh*, at p. 227.) "'We consider the ordinary meaning of the relevant terms, related provisions, terms used in other parts of the statute, and the structure of the statutory scheme.'" (*Prang*, at p. 1170; accord, *McHugh*, at p. 227.) "If the relevant statutory language permits more than one reasonable interpretation, we look to appropriate extrinsic sources, such as the statute's purpose, legislative history, and public policy." (*Prang*, at p. 1170; accord, *McHugh*, at p. 227 ["If the relevant statutory language is ambiguous, we look to appropriate extrinsic sources, including the legislative history, for further insights."].)

B.  *Section 66499.37 Does Not Bar the CEQA Cause of Action*
    1.  *CEQA Review*
"CEQA was enacted to (1) inform the government and public about a proposed activity's potential environmental impacts; (2) identify ways to reduce, or avoid, those impacts; (3) require project changes through alternatives or mitigation measures when feasible; and (4) disclose the government's

11

rationale for approving a project." (*Protecting Our Water & Environmental Resources v. County of Stanislaus* (2020) 10 Cal.5th 479, 488 (*Protecting Our Water*); accord, *Union of Medical Marijuana Patients, Inc. v. City of San Diego* (2019) 7 Cal.5th 1171, 1184-1185.) "CEQA prescribes how governmental decisions will be made whenever an agency undertakes, approves, or funds a project." (*Protecting Our Water*, at p. 488; accord, *Union of Medical Marijuana Patients*, at p. 1185.)

"If the project is discretionary and does not qualify for any other exemption, the agency must conduct an environmental review." (*Protecting Our Water, supra*, 10 Cal.5th at p. 488; accord, *Union of Medical Marijuana Patients, Inc. v. City of San Diego, supra*, 7 Cal.5th at p. 1186.) As the Supreme Court explained in *Protecting Our Water*, at pages 488 to 489, "The agency conducts an initial study to assess potential environmental impacts. (CEQA Guidelines, §§ 15002, subd. (k)(2), 15063, subd. (a).) If there is no substantial evidence that the project may significantly affect the environment, the agency prepares a negative declaration, and environmental review ends. ([Pub. Resources Code,] § 21080, subd. (c)(1); CEQA Guidelines, §§ 15002, subd. (k)(2), 15063, subd. (b)(2), 15070, subd. (a).) If potentially significant environmental effects are discovered, but the project applicant agrees to changes that would avoid or mitigate them, the agency prepares a mitigated negative declaration ([Pub. Resources Code,] § 21080, subd. (c)(2); CEQA Guidelines, § 15070, subd. (b)), which also ends CEQA review. [Citation.] Finally, if the initial study reveals substantial evidence that the project may have a significant environmental impact and a mitigated negative declaration is inappropriate, the agency must prepare and certify an

12

environmental impact report (EIR) before approving the project. ([Pub. Resources Code,] § 21080, subd. (d); CEQA Guidelines, §§ 15002, subd. (k)(3), 15063, subd. (b)(1); [citation].)"

"[I]f a lead agency is presented with a fair argument that a project may have a significant effect on the environment, the lead agency shall prepare an EIR even though it may also be presented with other substantial evidence that the project will not have a significant effect." (CEQA Guidelines, § 15064, subd. (f)(1); accord, *Berkeley Hillside Preservation v. City of Berkeley* (2015) 60 Cal.4th 1086, 1111-1112; *Save Agoura Cornell Knoll v. City of Agoura Hills* (2020) 46 Cal.App.5th 665, 674.) "'The fair argument standard thus creates a low threshold for requiring an EIR, reflecting the legislative preference for resolving doubts in favor of environmental review.'" (*Save Agoura Cornell Knoll*, at p. 676; accord, *Dunning v. Clews* (2021) 64 Cal.App.5th 156, 170.)

### 2. *The Subdivision Map Act*

"The Subdivision Map Act is 'the primary regulatory control' governing the subdivision of real property in California. [Citation.] The Act vests the '[r]egulation and control of the design and improvement of subdivisions' in the legislative bodies of local agencies, which must promulgate ordinances on the subject. (§ 66411.) The Act generally requires all subdividers of property to design their subdivisions in conformity with applicable general and specific plans and to comply with all of the conditions of applicable local ordinances." (*Gardner v. County of Sonoma* (2003) 29 Cal.4th 990, 996-997, fn. omitted; accord, *Pacific Palisades Bowl Mobile Estates, LLC v. City of Los Angeles* (2012) 55 Cal.4th 783, 798-799.) "Ordinarily, subdivision under

the Act may be lawfully accomplished only by obtaining local approval and recordation of a tentative and final map pursuant to section 66426, when five or more parcels are involved, or a parcel map pursuant to section 66428 when four or fewer parcels are involved." (*Gardner*, at p. 997; accord, *Pacific Palisades Bowl Mobile Estates*, at p. 799.)

"The local entity's enforcement power is directly tied to its power to grant or withhold approval of a subdivision map." (*Pacific Palisades Bowl Mobile Estates, LLC v. City of Los Angeles, supra*, 55 Cal.4th at p. 799; accord, *Guerrero v. City of Los Angeles* (2024) 98 Cal.App.5th 1087, 1103.) "The agencies exercise their authority by reviewing maps of a proposed subdivision. A tentative map must, among other things, be consistent with either the general local plan or an existing specific plan. (§§ 66473.5, 66474.)" (*City of Goleta v. Superior Court* (2006) 40 Cal.4th 270, 276.) "The subdivision process begins with submission to the city or county of an application, including a map depicting the proposed lots. The application and map are first reviewed for completeness. They are next reviewed for technical feasibility, which may require consultation with other agencies. [Citation.] The process typically involves one or more hearings. Thus, '[g]enerally, a public hearing is scheduled and conducted only after city and county staff have deemed the map complete, approved the technical feasibility of the map, and prepared an appropriate environmental analysis. The public hearing may be before an advisory agency that is authorized to approve, conditionally approve, or disapprove tentative maps . . . . After the required public hearing or hearings, the tentative map can be approved.'" (*Pacific Palisades Bowl Mobile Estates*, at p. 799.)

14

3. *Section 66499.37's 90-day limitations period*

Section 66499.37 provides, "Any action or proceeding to attack, review, set aside, void, or annul the decision of an advisory agency, appeal board, or legislative body concerning a subdivision, or of any of the proceedings, acts, or determinations taken, done, or made prior to the decision, or to determine the reasonableness, legality, or validity of any condition attached thereto, including, but not limited to, the approval of a tentative map or final map, shall not be maintained by any person unless the action or proceeding is commenced and service of summons effected within 90 days after the date of the decision.  Thereafter all persons are barred from any action or proceeding or any defense of invalidity or unreasonableness of the decision or of the proceedings, acts, or determinations.  The proceeding shall take precedence over all matters of the calendar of the court except criminal, probate, eminent domain, forcible entry, and unlawful detainer proceedings."

When the Legislature enacted section 66499.37 in 1974, the statute contained the same language (except for the reference to approval of a tentative or final map), but it set a 180-day limitations period for commencement of the action and service of the summons.  (Stats. 1974, ch. 1536, p. 3511.)  In 1980 the Legislature amended section 66499.37 to shorten the limitations period from 180 days to 90 days.  (Stats. 1980, ch. 1152, § 14, p. 3799.)  The legislative history reflects that the limitations period was reduced to 90 days because "[s]maller developers have stated that they are often unwilling to proceed with developments until the 180 day period has expired because of the costs they might incur if the development approval were challenged."  (Assem. Com. on Housing and Community

15

Development, Analysis of Assem. Bill No. 2320 (1979-1980 Reg. Sess.) as amended Apr. 7, 1980, p. 4.)

In 2007 the Legislature amended section 66499.37 to specify that the 90-day limitations period applies to any action to attack or set aside a decision, determinations made prior to the decision, or to determine the reasonableness, legality or validity of any attached condition, adding, "including, but not limited to, the approval of a tentative map or final map." (Stats. 2007, ch. 612, § 9, p. 5358; Sen. Com. on Judiciary, Analysis of Assem. Bill No. 763 (2007-2008 Reg. Session) as amended May 31, 2007, p. 7 ["This bill would clarify that the 90-day time limitation to attack, review, set aside, void, or annul the decision of a legislative body concerning a subdivision applies to, but is not limited to, the approval of a tentative map or final map."].)

C.    *Section 66499.37 Bars Only a Portion of the CEQA Cause of Action*

1.    *Applicable law*

On appeal, SCOPE challenges only the dismissal of its CEQA cause of action.[6]  Relying on *Friends of Riverside's Hills v. City of Riverside* (2008) 168 Cal.App.4th 743, 755-756 (*Friends*), SCOPE contends the CEQA cause of action does not "concern a subdivision" within the meaning of section 66499.37 because

---

[6]    SCOPE acknowledges it did not brief the second cause of action for violations of the planning and zoning law and the SMA in the trial court, and therefore it has abandoned or forfeited those claims.  (*Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 603 ["'issues not raised in the trial court cannot be raised for the first time on appeal'"]; *Gutierrez v. Carmax Auto Superstores California* (2018) 19 Cal.App.5th 1234, 1243-1244 [same].)

none of the CEQA claims could have been brought under the SMA. Williams and the County, by contrast, argue SCOPE's CEQA claims are barred under the plain language of section 66499.37 because the statute applies to any action to set aside the decision of a legislative body "concerning a subdivision," or to determine the reasonableness or validity of a condition of approval of a tentative or final map.

We do not read section 66499.37 to apply to *any* action challenging a decision "concerning a subdivision," even absent a connection to the SMA. Although the statute refers to a decision concerning a subdivision, the legislative history of the 1980 amendment to section 66499.37 (which reduced the limitations period from 180 days to 90 days) reflects the Legislature's intent that section 66499.37 apply to actions brought under the SMA (which in turn, applies to subdivisions). (Sen. Com. on Local Government, Analysis of Assem. Bill No. 2320 (1979-1980 Reg. Sess.), as amended May 5, 1980, p. 4, italics added ["Statute of limitations for legal actions *brought under the Map Act*: The law now provides that any legal action to overturn a map approval by a local agency must occur within 180 days of the decision of such agency. AB 2320 would reduce that time period to 90 days."]; Legis. Counsel's Dig., Assem. Bill No. 2320 (1979-1980 Reg. Sess.), as amended Apr. 7, 1980, p. 4 ["Present law establishes a 180-day statute of limitations for purposes of bringing judicial actions under the Subdivision Map Act. This bill would revise this to 90 days after the decision."]; see *Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 23 (*Hensler*) ["'The "patent legislative objective" of [section 66499.37] is to ensure that judicial resolution of Subdivision Map Act disputes occurs "as expeditiously as is consistent with the requirements of due

17

process of law.'" [Citation.] . . . . [S]ection 66499.37 applies by its terms to *any* action involving a controversy over or arising out of the Subdivision Map Act."].)

The Supreme Court in *Hensler* made clear that, although the Legislature's focus in section 66499.37 was on challenges to decisions made under the SMA, the form of the action is not controlling. (*Hensler, supra*, 8 Cal.4th at p. 23.) The court explained, "To determine the statute of limitations which applies to a cause of action it is necessary to identify the nature of the cause of action, i.e., the 'gravamen' of the cause of action. [Citations.] '[T]he nature of the right sued upon and not the form of action nor the relief demanded determines the applicability of the statute of limitations under our code.'" (*Id.* at pp. 22-23.) The court continued, "[S]ection 66499.37 applies by its terms to *any* action involving a controversy over or arising out of the Subdivision Map Act. Therefore, if this is a claim arising out of application of a land use regulation authorized by that act, section 66499.37 applies." (*Id.* at p. 23.)

In *Hensler*, the plaintiff brought an inverse condemnation action alleging an ordinance enacted by the City of Glendale under the SMA, which prohibited construction on major ridgelines, was a regulatory taking because the ordinance precluded him from developing 40 percent of his property. (*Hensler, supra*, 8 Cal.4th at p. 8.) The Supreme Court held the 90-day limitations period under section 66499.37 governed the action because, although the lawsuit sought only compensation for the alleged taking, the constitutional validity of the ordinance adopted under the SMA needed to be determined before compensation could be ordered, to afford the city an opportunity to rescind the ordinance or exempt the developer's property

18

instead of paying compensation.  (*Hensler,* at p. 7.)  The court concluded, "The gravamen of plaintiff's [inverse condemnation] cause of action is . . . a claim that the Glendale ordinance [enacted under the SMA] is invalid on its face or as applied . . . ."  (*Id.* at pp.  26.)

More recently, the Courts of Appeal in *Friends, supra*, 168 Cal.App.4th at pages 746 and 751 and *Legacy Group v. City of Wasco* (2003) 106 Cal.App.4th 1305, 1311 and 1313-1314 (*Legacy Group*) expanded on the holding of *Hensler* in concluding that section 66499.37 applies to a claim if it overlaps with an SMA claim or could have been brought under the SMA.  We agree with this statutory construction and apply it here.  SCOPE is correct that most of the CEQA claims in the first cause of action are not barred because they could not have been brought under the SMA and do not overlap with an SMA claim.  But to the extent the CEQA claims challenge the adequacy of mitigation measures in the Mitigation Program imposed as a condition of the County's approval of the Project, including the vesting tentative tract map, the claims are barred.

The analysis in *Friends, supra*, 168 Cal.App.4th at pages 747 to 748 is instructive.  There, the Court of Appeal analyzed the application of section 66499.37 to the CEQA cause of action in a case where the plaintiff (Friends) alleged causes of action under both CEQA and the SMA.  (*Friends*, at pp. 755-756.)  Friends alleged the city violated CEQA by failing to require the project applicant to implement mitigation measures regarding open space that were required by the applicable specific plan.  (*Id.* at p. 755.)  Friends's three other causes of action alleged violations of the SMA and the municipal code and, like the first cause of action for violation of CEQA, alleged the city failed to

require as a condition of approval the mitigation measures regarding open space adopted as part of the specific plan. (*Id.* at pp. 755-756.) The court concluded the 90-day limitations period under section 66499.37 barred Friends's CEQA cause of action, reasoning, "[T]he CEQA cause of action was merely another vehicle for challenging the City's failure to require the applicant to implement open space and other mitigation measures that were part of the Project's conditions of approval and of the Specific Plan. Friends not only could have brought this claim under the SMA rather than CEQA, it in fact did, in causes of action two through four." (*Id.* at p. 756.) Accordingly, "Friends was required to comply with the 90-day summons requirement for the CEQA cause of action, because it both overlapped with the SMA causes of action and could have been (and was) brought under the SMA." (*Ibid.*)

In *Legacy Group*, the Court of Appeal concluded section 66499.37 did not apply to the developers' breach of contract claim asserted against the city for breach of the development agreements for a subdivision (by withdrawing funding for infrastructure acquisition), rejecting the city's argument that section 66499.37 applied because the developers' cause of action attacked or reviewed a decision of the city "'concerning a subdivision.'" (*Legacy Group, supra,* 106 Cal.App.4th at pp. 1310-1311, 1313.) The court explained, "[W]e are reluctant to extend section 66499.37 to breach of contract claims unless the gravamen of the claim concerns acts that could have been challenged as a violation of the SMA. This exception [for acts that could have been challenged under the SMA] precludes the parties from avoiding the application of section 66499.37 to decisions arising under the SMA simply by

20

restating as contractual covenants the responsibilities imposed on local government by the SMA." (*Id.* at p. 1313.)

By contrast, the developers' separate breach of contract claim that the city breached the development agreements by refusing to approve the final tract maps was barred by the SMA limitations period. The court reasoned, "When a breach of contract claim overlaps with or concerns acts by the city council that could have been challenged under the SMA, then the shorter statute of limitations set forth in section 66499.37 will apply. Accordingly, Developers' attack on the failure to approve maps, even though pled as a breach of contract, should have been brought within the 90-day period of limitation." (*Legacy Group, supra,* 106 Cal.App.4th at p. 1314.)

Williams and the County focus on the language in *Hensler* that if a claim arises from the SMA, it is subject to the SMA limitations period "regardless of the title attached to the cause of action or the remedy sought." (*Hensler, supra*, 8 Cal.4th at p. 26.) Thus, they contend, the CEQA cause of action is subject to section 66499.37 because it challenges the County's approval of the vesting tentative tract map under the SMA. They point to similar language in *Presenting Jamul v. Board of Supervisors* (1991) 231 Cal.App.3d 665 (*Jamul*) that "[t]he broad language the Legislature employed within section 66499.37 was specifically designed to include any challenge, regardless whether procedural or substantive in character, *to any subdivision-related decision* of either a legislative or advisory entity, or any of the necessary precedent proceedings, acts or determinations pursued before the making of the challenged decision." (*Id.* at p. 671, italics added.) The *Jamul* court continued, "[R]egardless of the nature of or label attached to the action challenging the legislative body's

21

subdivision-related decision, the action is governed by section 66499.37." (*Ibid*.)  Although the *Jamul* court referred to a "subdivision-related decision," the case involved the plaintiff's request to toll the expiration date of a tentative subdivision map for a proposed development, which the court characterized as a "Subdivision Map Act controvers[y]." (*Ibid*.)  The holding in *Jamul* does not mean section 66499.37 applies to *any* subdivision-related decision.  Rather, *Jamul* held that section 66499.37 governs any subdivision-related decision involving a controversy under the SMA regardless of the label placed on that decision.

 *Hensler* teaches that the SMA limitations period applies to any action that arises from or involves a controversy under the SMA[7] or challenges a condition imposed as part of an approval of a subdivision or tentative or final map under the SMA, regardless of the form of the action—in *Hensler*, an inverse condemnation

_____

[7] The Supreme Court in *Hensler* listed nine appellate decisions (including *Jamul*) that considered the limitations period "in a case involving a controversy related to a subdivision," all of which held that section 66499.37 applied "no matter what the form of the action." (*Hensler, supra*, 8 Cal.4th at pp. 26-27.) Each case directly involved an SMA controversy or arose from an approval under the SMA.  (See, e.g., *Hunt v. County of Shasta* (1990) 225 Cal.App.3d 432, 442 [action for declaratory relief that subdivision parcels complied with SMA]; *Griffis v. County of Mono* (1985) 163 Cal.App.3d 414, 419 [petition for writ of mandate seeking rescission of approval of final map and declaration that tentative map had expired]; *Timberidge Enterprises, Inc. v. City of Santa Rosa* (1978) 86 Cal.App.3d 873, 886 [action to invalidate city's resolution imposing school impact fees as condition of city's approval of plaintiff's subdivision maps].)

22

action arising from application of an ordinance adopted under the SMA; and in *Jamul*, a writ petition and declaratory relief action attacking the county's denial of the owner's request to toll the expiration date of the tentative map. (*Hensler, supra*, 8 Cal.4th at pp. 6-7, 22-23; see *Jamul, supra*, 231 Cal.App.3d at p. 666.) Accordingly, to the extent SCOPE's CEQA cause of action asserts a claim that arises from or involves a controversy under the SMA or challenges the reasonableness, legality, or validity of a condition of approval under the SMA of the vesting tentative tract map for the Project, section 66499.37 applies. As the *Friends* and *Legacy Group* courts elaborated, a CEQA claim is also barred if it overlaps with a claim for violation of the SMA or could have been brought under the SMA.[8] (*Friends, supra*,

---

[8]        Williams and the County also rely on our decision in *AIDS Healthcare Foundation v. City of Los Angeles, supra*, 86 Cal.App.5th at page 327, in which we addressed the 90-day limitations period in section 65009, which applies to challenges to specified land use and zoning decisions. We concluded section 65009 applied to bar the injunctive relief action filed by AIDS Healthcare Foundation (AHF) under the Political Reform Act of 1974 (PRA; § 81000 et seq.) to set aside the project and permit approvals by the city based on alleged bribes accepted by two council members on the city's planning and land use management (PLUM) committee. (*AIDS Healthcare Foundation*, at pp. 327, 353.) We explained, relying on *Hensler, supra*, 8 Cal.4th at pages 22 to 23, "While AHF may challenge corruption under the PRA, the gravamen of AHF's action is an attack on, or review of, the PLUM committee's decisions related to permitting and real estate project approvals. Section 65009 applies directly to that challenge. AHF cannot escape the statutory time bar by couching its claim as 'necessarily dependent on a finding of a violation of the PRA' when the

23

168 Cal.App.4th at pp. 755-756; *Legacy Group, supra*, 106 Cal.App.4th at pp. 1313-1314.)

### 2. *Most of SCOPE's CEQA claims are not barred*

Here, unlike the plaintiffs in *Friends*, SCOPE alleged five procedural CEQA violations by the County: (1) failure to provide notice of intent to adopt the revised MND at a May 19, 2021 regional planning commission hearing; (2) failure to provide the May 12, 2021 version of the MND to CEQAnet; (3) failure to recirculate the MND following the August 2021 discovery of a mountain lion at the Project site; (4) misleading and confusing the public and decision makers by using different numbers to identify the mitigation measures in the MND and the Mitigation Program; and (5) failure to consult with the Santa Monica Mountains Conservancy. These procedural violations are unique to CEQA and could not have been brought under the SMA. SCOPE also alleged the County failed to adequately analyze and disclose the Project's environmental impacts with respect to fire hazards, wildlife habitat connectivity, mountain lions, rare and threatened plant species, hydrology and water supply, open space and trails, air quality, transportation, greenhouse gases, and noise. SCOPE further alleged an EIR is required because there

---

violation itself involves challenging the PLUM committee's project approvals." (*AIDS Healthcare Foundation,* at p. 353.) Here, in contrast to *AIDS Healthcare Foundation*, SCOPE's allegations regarding the County's procedural violations of CEQA and its failure to analyze and disclose the Project's environmental impacts are limited to the failure to comply with CEQA, including preparation of an EIR, and not a challenge under the SMA.

is substantial evidence that these environmental impacts may be significant. Like the allegations relating to the CEQA procedural violations, these allegations assert CEQA claims that do not arise from the SMA or involve any controversary under the SMA.

Williams and the County contend section 66499.37 governs the entire CEQA cause of action because the Board's approval of the vesting tentative tract map was "inextricably linked" to the Project's CEQA review and mitigation measures. Williams and the County point to finding 58 with respect to the vesting tentative tract map that "[a]fter consideration of the MND and [Mitigation Program], together with the comments received during the public review process, the Board finds, on the basis of the whole record before it, that there is no substantial evidence that the Project, as conditioned, will have a significant effect on the environment." Finding 62 likewise states, "The Board finds that the [Mitigation Program], prepared in conjunction with the MND, identifies in detail how compliance with its measures will mitigate or avoid potential adverse impacts to the environment from the Project. . . . The mitigation measures were circulated to State agencies for comment and review and made publicly available in accordance with CEQA statutes and guidelines."

Although these findings were made with respect to the vesting tentative tract map, they were made by the Board to comply with CEQA, not the SMA. And, based on the findings, the Board "[c]ertifie[d] that the MND for the Project was completed in compliance with CEQA and the State and County CEQA Guidelines related thereto." The County's approval of the vesting tentative tract map was required to comply with CEQA. (See Pub. Resources Code, § 21080, subd. (a) ["this division [under CEQA] shall apply to discretionary projects proposed to be

25

carried out or approved by public agencies, including, but not limited to, . . . the approval of tentative subdivision maps unless the project is exempt from this division"].) The fact that the County's approval had to comply with CEQA does not transform a cause of action for violation of CEQA into a claim that arises under the SMA or overlaps with an SMA claim. Likewise, SCOPE's claims that the County failed to adequately analyze and disclose the Project's environmental impacts in the MND arise under CEQA, not the SMA, and SCOPE could not have brought these claims under the SMA.

By contrast, we agree with Williams and the County that SCOPE's claims within the CEQA cause of action challenging the adequacy of the mitigation measures in the Mitigation Program fall within the scope of section 66499.37 because they challenge conditions of the County's approval of the vesting tentative tract map under the SMA. Condition 14 of the County's approval of the vesting tentative tract map provided that the subdivider (Williams) "shall comply with all mitigation measures identified in the [Mitigation Program], which are incorporated by this reference." And condition 15 specified that "[w]ithin 30 days of the date of final approval of this grant by the County, Subdivider shall record a covenant and agreement, which attaches the [Mitigation Program] and agrees to comply with the mitigation measures imposed by the MND for this Project, in the office of the Recorder. . . . As a means of ensuring the effectiveness of the mitigation measures, Subdivider shall submit annual mitigation monitoring reports to Regional Planning, or at greater intervals, if required. The reports shall describe the status of Subdivider's compliance with the required mitigation measures."

26

As discussed, section 66499.37 applies to any action "to determine the reasonableness, legality, or validity of any condition attached [to an approval of a subdivision], including, but not limited to, the approval of a tentative map or final map." Because SCOPE in its CEQA cause of action challenges the reasonableness (and adequacy) of the mitigation measures under the Mitigation Program with respect to wildfire impacts, mountain lions, rare plant species, wetlands, and noise, this portion of the CEQA cause of action is barred for lack of compliance with the limitations period under section 66499.37 for service of the summons.[9]

---

[9]     SCOPE contends issue preclusion bars Williams and the County from asserting that SCOPE's failure to comply with section 66499.37's summons requirement barred the CEQA cause of action. SCOPE argues our unpublished opinion in *Friends of Highland Park v. City of Los Angeles* (Nov. 4, 2015, B261866) [nonpub. opn.]) is a final adjudication of the same litigated issue (whether section 66499.37 applies to a CEQA cause of action) and issue preclusion applies because the County is in privity with the City of Los Angeles. SCOPE forfeited the issue by failing to raise it in the trial court. (*Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 215; *Cabatit v. Sunnova Energy Corp.* (2020) 60 Cal.App.5th 317, 322.) Even if it was not forfeited, SCOPE's contention fails because issue preclusion only applies "'(1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party.'" (*Samara v. Matar* (2018) 5 Cal.5th 322, 327.) SCOPE has failed to show the County of Los Angeles is in privity with the City of Los Angeles (the respondent in the *Friends of Highland Park* case), and Williams

27

SCOPE argues it should have been granted leave to amend to remove the allegations that are barred under section 66499.37, including its request that approval of the vesting tentative tract map be set aside. Williams and the County urge us to affirm the trial court's grant of Williams's motion for judgment on the pleadings without leave to amend. Neither side has it quite right.

A motion for judgment on the pleadings, like a demurrer, cannot be granted as to only a portion of a cause of action. (*Spencer v. City of Palos Verdes Estates* (2023) 88 Cal.App.5th 849, 861-862; *Fire Ins. Exchange v. Superior Court* (2004) 116 Cal.App.4th 446, 452 [a motion for judgment on the pleadings, like a general demurrer, "does not lie as to a portion of a cause of action, and if any part of a cause of action is properly pleaded, the demurrer will be overruled [or motion for judgment on the pleadings denied]"]; see *Southern California Pizza Co., LLC v. Certain Underwriters at Llyod's, London* (2019) 40 Cal.App.5th 140, 154 ["'[a] demurrer must dispose of an entire cause of action to be sustained'"].) Therefore, because a portion of the CEQA cause of action was not barred under section 66499.37, the trial court erred in granting the motion for judgment on the pleadings.

---

was not a party to the *Highland Park* case. Moreover, the cases involve different projects and different alleged violations.

## DISPOSITION

The judgment is reversed.  The trial court is to enter a new order denying the motion for judgment on the pleadings as to the first cause of action and granting the motion as to the second cause of action.  Santa Clarita Organization for Planning Environment and Advocates for the Environment shall recover their costs on appeal from Williams Homes, Inc. and the County of Los Angeles.

FEUER, J.

We concur:


SEGAL, Acting P. J.


STONE, J.